**Billy G. PAYNE, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee.**

No. 48A02–8612–CR–421.

Court of Appeals of Indiana,
Second District.

Dec. 2, 1987.

Douglas R. Long, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Billy G. Payne pleaded guilty to two counts of battery. The trial court sentenced him to five years, suspended. Shortly afterward, the trial court revoked his probation for violations of the terms set forth at the time of sentencing. He now appeals the revocation of his probation.

We reverse.

On December 3, 1984, the Madison County prosecutor filed three battery charges against Payne. One of the victims was his wife, Linda. On January 21, 1986, the trial court accepted a plea agreement whereby Payne pleaded guilty to two of the charges for sentences of five and one years to be served concurrently. The court then suspended the sentences, despite the probation department's report urging rejection of the agreement and recommending incarceration in light of Payne's prior record for violence and his lengthy history of alcohol abuse. The trial court stated that the terms of Payne's probation would be:

"under the ordinary terms and conditions of the probation department of this Court. As a further condition of probation the defendant shall be evaluated by the Center for Mental Health and obtain whatever counseling deemed necessary. Further, the defendant shall make resti-

tution to all victims herein...." Record at 10.

Within three weeks following sentencing, the probation department filed a notice of probation violation. After two amendments of the revocation petition, the matter went to hearing on June 30, 1986, upon the following allegations:

"Failure to behave well and not violate laws of Indiana or U.S.:

a) During week of 2/2/86 to 2/9/86, defendant allegedly assaulted Linda Payne, thereby violating the laws of the State of Indiana

b) That while in custody, the defendant was allowed to participate in an in-patient treatment program, and on 6/13/86, Richmond State Hospital terminated him for violating his treatment program." Record at 98.

The State's case at hearing was devoted to supporting these allegations.

Alexis Scherrer, probation officer, testified she received anonymous phone calls informing her that Linda Payne had been hospitalized and, upon investigating further, discovered she had indeed been admitted to Mercy Hospital in Elwood. Her conversation with Linda's physician indicated that Linda had been assaulted by Payne, but Scherrer never discussed the assault with Linda herself. Carl Caldwell, a police officer whom Scherrer contacted, provided a bit more information. Caldwell testified that a Mrs. Price advised him Linda was hospitalized as the result of a beating. Caldwell said he confirmed this information with a visit to Linda, who told him that Payne had beat her on Friday, January 31, cutting her in the left calf with a broken lamp. Linda also related to him that Payne returned home drunk the next day and further injured her leg by twisting it under threat of breaking it. The State then presented Lois Norris, director of Mercy Hospital's medical records, who provided the foundation for introducing Linda's hospital records into evidence. The records of Linda's hospitalization from February 7 through February 15, 1986, indicate that she was treated for "[i]nfected ulceration left leg with cellulitis ... sprain

and contusion left ankle and foot ...," (Record at 147), the onset of which occurred the Friday before admission, January 31. Record at 158. Other narrative notes included "Pt states husband twisted lt ankle & hit lower leg c̄[1] lamp" (Record at 144); "She alleges that this started as a result of a family violence, her husband was drinking and the fight took place at home" (Record at 149); "This started as a result of family violence" (Record at 150). Linda's x-ray report stated as a symptom of her injury: "Struck c̄ heavy object." Record at 154. The only additional related information in the records was the hospital's social service progress notes of a meeting with Linda in which she was provided information about Alanon and Women's Alternatives services. Record at 157. In concluding its case, the State recalled Alexis Scherrer, who testified that Payne had been admitted to Koala Center for treatment and rehabilitation and was later transferred to Richmond State Hospital from which he was dismissed for program violations.

Throughout the course of the State's case, Payne repeatedly and continuously objected to the proffered evidence and testimony on the grounds of hearsay. In fact, counsel was able to elicit from Scherrer that she had no personal knowledge of any of the matters to which she testified and that she was merely relating what others had told her. The trial court overruled all defense hearsay objections and permitted the State to present its case in this manner, although Linda Payne was present in court and available for presentation of evidence.

At the close of the evidence, the trial court ruled that Payne had violated probation and heard Linda's testimony that she did not want Payne imprisoned. Although its statement of reasons for revoking probation are not clear (and were not reduced to writing), the court evidently considered both the alleged 1986 assault and Payne's failure to complete the rehabilitation program when the court imposed sentence of three years' incarceration.

Payne's first and pivotal assertion attacks the trial court's admission of the State's evidence over his hearsay objections. We must review the trial court's actions to determine whether it abused its discretion in admitting the State's evidence. *See, e.g., Young v. State* (1983) 3d Dist. Ind.App., 451 N.E.2d 91. The trial court erred in overruling Payne's hearsay objections.

Hearsay evidence is defined as:

" 'testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' " *Patterson v. State* (1975) 263 Ind. 55, 56–57, 324 N.E.2d 482, 484; *accord Choate v. State* (1984) Ind., 462 N.E.2d 1037.

The admission of such evidence is objectionable when "the declarant is not in court or otherwise available for cross-examination." *Wagner v. State* (1985) Ind., 474 N.E.2d 476, 491. Under the circumstances here, all the evidence presented regarding Payne's failure to successfully complete alcohol abuse treatment was objectionable and improperly admitted for its substantive value. Scherrer recited the only testimony regarding Payne's treatment but admitted it had all been related to her by other parties. The matter of the alleged assault is somewhat different.

It is evident that the ultimate sources of the fact that Payne had beaten his wife came from either anonymous calls or from Linda herself. The anonymous tipsters were not present in court, and the State has presented no argument compelling us to apply any exception to the bar against this evidence. It was improperly admitted over defense objections. Linda, however, *was* present in court, but she took the stand only on the defense's behalf to plead clemency in her husband's sentencing. We do not find her mere presence in

---

1. "c̄" is a medical abbreviation for the word "with". 1 Tennenhouse, Attorneys Medical

Deskbook § 75, p. 248 (2d ed. 1983).

court sufficient to overcome Payne's hearsay objections.

■ At no time during the hearing did the State put Linda on the witness stand to question her about the alleged assault. *See Lewis v. State* (1982) Ind., 440 N.E.2d 1125, *cert. denied* (1983) 461 U.S. 915, 103 S.Ct. 1895, 77 L.Ed.2d 284. Neither did the State put her on the stand to acknowledge any prior statements. *See Jackson v. State* (1985) 2d Dist. Ind.App., 485 N.E.2d 144, *trans. denied.* Without some acknowledgement from Linda that she had made those statements, she cannot be considered to have been available for cross-examination with respect to them or to the events in question. *Id.* The evidence clearly conforms to the *Patterson* hearsay pattern and was rendered inadmissible for substantive purposes by the State's failure to establish a basis for its reception. The court abused its discretion in allowing the evidence over proper objection.

■ The State argues that because this was a probation revocation hearing and not an adjudication of guilt, Payne was not entitled to the full panoply of rights otherwise accorded criminal defendants. It is true that a probation revocation hearing is in the nature of a civil proceeding, *see Szymenski v. State* (1986) 3d Dist. Ind. App., 500 N.E.2d 213, and that probationers are not entitled to the full array of constitutional rights afforded at trial. *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656; *Morrissey v. Brewer* (1972) 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484; *Dulin v. State* (1976) 169 Ind.App. 211, 346 N.E.2d 746, *trans. denied; see also* Ind.Code 35–38–2–3(d) (Burns Code Ed.1985) (list of constitutional rights that *are* offered to probationers at a revocation hearing). However, that does not alter the fact that the hearsay exclusion rule applies in civil proceedings. *See D.H. v. J.H.* (1981) 1st Dist. Ind.App., 418 N.E.2d 286. We see no rationale for treating a probationer with less deference than

a civil litigant. Nor are we persuaded to do so by the State's citation to two federal cases in which probation was revoked upon the basis of hearsay evidence. *See Egerstaffer v. Israel* (7th Cir.1984) 726 F.2d 1231; *United States v. Penn* (11th Cir. 1983) 721 F.2d 762. In both those cases, the courts ruled the hearsay evidence admissible under the generic exception applicable to evidence which is inherently trustworthy and reliable. Indiana, has expressly rejected this hearsay exception. *C.T.S. Corp. v. Schoulton* (1978) 270 Ind. 34, 383 N.E.2d 293; *State v. Edgman* (1983) 4th Dist. Ind.App., 447 N.E.2d 1091, *trans. denied.* We therefore are unable to subscribe to the State's arguments that evidence was admissible under a lowered standard for probationers.[2]

■ Additionally, we are not convinced that the statements in Mercy Hospital's records were admissible under the business records exception to the hearsay rule. Medical records are admissible as business records. *Fendley v. Ford* (1984) 2d Dist. Ind.App., 458 N.E.2d 1167. However, any facts within a medical history *given by the patient* are not admissible as substantive evidence. *C.T.S. Corp. v. Schoulton, supra,* 383 N.E.2d 293. Thus, the statements in the records regarding the alleged cause of Linda's injury by assault are not within the exception and were inadmissible. The trial court abused its discretion in ruling otherwise.

■ The same conclusion is mandated with regard to the hearsay evidence concerning Payne's failure to satisfactorily complete the alcohol education and treatment program.

■ These conclusions divest the record of sufficient substantive evidence to support the probation revocation upon either or both the grounds asserted in the revocation petition. We are therefore compelled to reverse the judgment of the court which revoked Payne's probation.[3]

**2.** We also reiterate concerns expressed in *Jackson v. State, supra,* 485 N.E.2d at 148, regarding an attempt to bootstrap *Patterson* evidence into the record as substantive matters instead of putting the declarant-victim on the stand.

**3.** We are not unmindful that the petition for revocation may well have been supportable by

The judgment is reversed and the cause remanded with instructions to vacate the judgment and for such further proceedings as may be consistent herewith. *See Brown v. State* (1983) 2d Dist. Ind.App., 458 N.E. 2d 245, *trans. denied.*

SHIELDS, P.J., and BUCHANAN, J., concur.

admissible evidence. As discussed, however, the presentation of the State's case in support of the petition's allegations was deficient. We may not affirm the revocation in speculation as to what the State might have proved.