John Edward COX, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A02–9703–CR–158.

Court of Appeals of Indiana.

Oct. 27, 1997.

Transfer Granted Feb. 12, 1998.

Christopher A. Cage, Anderson, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Katherine L. Modesitt, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

GARRARD, Judge.

John E. Cox ("Cox") appeals from the trial court's order revoking his placement at a work release center for a violation of work center rules, and ordering him to serve the balance of his sentence at the Indiana Department of Correction.

## FACTS AND PROCEDURAL HISTORY

Cox was convicted by a jury of three counts of dealing in marijuana, all class A misdemeanors, and one count, count IV, of dealing in a schedule I controlled substance, a class B felony. He was sentenced on March 6, 1995 to one year executed on each of the first three counts, and ten (10) years with four (4) years to be executed on in-home detention and six (6) years suspended on count IV. The court ordered the sentences to run concurrently, and placed Cox on probation for six (6) years upon his release from in-home detention.

On August 5, 1996, the Madison County Probation Department filed a petition for termination of in-home detention privilege based on Cox's submission of a urine specimen which tested positive for cannabinoids (marijuana), a violation of the in-home detention program rules. The trial court held an initial hearing on the probation violation and advised Cox that he faced a possible penalty of ten (10) years executed. Cox pleaded guilty to the violation on September 16, 1996, and the trial court imposed a full revocation of his suspended sentence and ordered the sentence to be served at the work release center.[1] Cox agreed with the State's recommendation indicating that any violation of the work release center rules would cause Cox to serve his sentence at the Department of Correction. Record at 37.

Following Cox's placement in work release, David Surratt ("Surratt"), the operations manager of the work release center, filed a "Notice of Violation of Work Release Center Rules," alleging that Cox had submitted a urine sample on November 4, 1996 which

---

1. Although a petition for termination of in-home detention was filed, the trial court, in its case chronological summary, refers to the petition as a notice of probation violation. Record at 10–11. Additionally, the trial court advised Cox at the initial hearing that he was subject to execution of his entire ten (10) year sentence. It appears from the record that the parties agreed on the sentence. The following exchange took place between the trial court and the parties:

    Mr. Cummings [counsel for the State]: There is a recommendation from the State. It would be a full revocation but the Court would not impose that revocation that executed portion would be at the Work–Release Center that he

    would be on high-risk supervision and that any violation of the Work–Release Center rules or any positive tests, urine tests, or any violation of the Court's probation orders and rules, ah, would cause him to be immediately, his, his sentence would be immediately executed to the Department of Corrections.
    The Court: Is that correct, Mr. Hulse?
    Mr. Hulse [counsel for Cox]: Yes, it is, Your Honor.
    Record at 37. Additionally, Cox failed to challenge the trial court's September 16, 1996 order revoking his probation and ordering that he serve his sentence at the work release center. See Issue I, infra.

subsequently tested positive for cannabinoids. Surratt requested that Cox be removed from the work release program.

The trial court conducted a hearing on the matter on December 16, 1996. The only witness for the State was Surratt, who testified that Cox gave a urine specimen which was tested for narcotics, and he identified State's Exhibit 1 ("Exhibit 1") as the test results received from Witham Memorial Hospital Toxicology Laboratory ("Witham"). When the State moved to admit Exhibit 1, the court allowed Cox to ask some preliminary questions, and he established that Surratt did not prepare Exhibit 1 and had no first hand knowledge of its contents. Cox objected to the document's admission, arguing that it was hearsay and that there was no foundation for admitting it. The trial court questioned Surratt briefly and established that Surratt determined that Cox had violated the work release center rules based on Exhibit 1, which the trial court acknowledged was hearsay. Record at 44. On further questioning by Cox, Surratt testified that he had no first hand knowledge of Cox's drug use and that he was basing Cox's violation and his unacceptability for the program entirely on Exhibit 1. Cox again reiterated his objection on hearsay grounds, arguing that he had the "right to confront all the witnesses against him and I can't cross examine this document if they are not here." Record at 46.

Based on Surratt's testimony, the trial court found that Cox violated his conditions of work release and was no longer acceptable to the program and ordered him incarcerated in the Department of Correction for the balance of his sentence. When Cox asked the trial court to clarify whether Exhibit 1 was admitted, the court indicated that it was admitted to show the reason Mr. Surratt violated Cox's work release, but not for its truth or falsity. Record at 47.

### ISSUES

Although Cox presents six issues for review,[2] we need address only two:

I. Whether the trial court erred in ordering the execution of Cox's previously suspended sentence where he was not yet placed on probation.

II. Whether the trial court erred in admitting and considering State's Exhibit 1, and if so, whether there was sufficient evidence to support the trial court's revocation of placement without State's Exhibit 1.

### DISCUSSION AND DECISION

**I.**

■ We initially address Cox's argument that the trial court erred in ordering that his previously suspended sentence be executed because he had not yet been placed on probation. Cox's argument is untimely. Cox is challenging the trial court's December 16, 1996 order that he serve the balance of his sentence at the Indiana Department of Correction. However, at the time the work release center filed a "Notice of Violation of Work Release Rules," Cox's probation had already been revoked. The trial court previously revoked Cox's suspended sentence on September 16, 1996, as a result of his violation of in-home detention rules.

The trial court stated in its September 16, 1996 order:

> The defendant admits that he violated the conditions of his in-home detention privilege in that he used marijuana.
>
> Defendant, having been found guilty of violating the conditions of his in-home detention, as sanctions, *the Court fully revokes his previously suspended sentence* and orders him incarcerated in the Madison County Work Release Center for the balance of his sentence.

Record at 20 (emphasis added).

Pursuant to Indiana Code § 35–38–2–3(i), "[a] judgment revoking probation is a final appealable order." In his appeal, Cox is challenging the trial court's December 1996 order which revoked Cox's placement at the

---

2. Because we find the evidence insufficient to support the trial court's revocation of Cox's placement at the work release center, we need not address Cox's other arguments. We address Issue I to clarify that the hearing that Cox challenges was not a probation revocation hearing, but a hearing to revoke a defendant's placement in a community correction program.

work release center and committed him to the Department of Correction for the remainder of his sentence. However, the work release center violation did not result in the revocation of his suspended sentence. His suspended sentence was revoked and his placement changed by agreement in September 1996 based on his admitted violation of in-home detention rules. Given that Cox failed to timely appeal the trial court's September 1996 order, he cannot challenge the trial court's revocation of his suspended sentence by challenging the trial court's December 1996 order which modified his placement. His argument is waived to the extent that he challenges the trial court's revocation of suspended sentence.[3]

## II.

Cox contends that the trial court erred in admitting and considering the results of the urine test reported by Witham, State's Exhibit 1. Without the trial court's improper admission and consideration of the urine test results, Cox maintains that the evidence was insufficient to revoke his placement. We agree.

In support of his contention, Cox cites *Greer v. State*, 669 N.E.2d 751 (Ind.Ct.App. 1996), *trans. granted*, for the proposition that there is no reasonable justification for not applying the Indiana Rules of Evidence in probation revocation procedures. In addition to finding Cox's statement overly broad, we agree with the State that pursuant to Indiana Appellate Rule 11(B)(3), *Greer* was vacated and held for naught when the Indiana Supreme Court granted transfer. However, we find the rationale and support found in *Greer* to be applicable.

It is well settled that probationers are not entitled to the full array of constitutional rights afforded at trial. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Payne v. State*, 515 N.E.2d 1141, 1144 (Ind.Ct.App.1987); *Isaac v. State*, 605 N.E.2d 144, 148 (Ind.1992), *cert. denied* 508 U.S. 922, 113 S.Ct. 2373, 124 L.Ed.2d 278 (1993) (A defendant at a probation revocation hearing is not endowed with all the same rights he possessed prior to his conviction). However, our supreme court in *Isaac v. State, supra*, indicated:

> There are certain due process rights, of course, which inure to a probationer at a revocation hearing. These include written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine adverse witnesses, and a neutral and detached hearing body. Indiana Code § 35–38–2–3(d) (West 1986) also ensures the probationer the right to confrontation, cross-examination, and representation by counsel.

*Id.* at 148 (citations omitted) (footnote omitted). Moreover, in *Million v. State*, 646 N.E.2d 998 (Ind.Ct.App.1995), this court concluded that "at a minimum, the due process requirements expressed by our supreme court [in *Issac*] for probation revocations are required when the trial court revokes a de-

---

3. Cox's argument is also unsuccessful on the merits. We examined Cox's contention as an issue of first impression in Indiana in *Ashba v. State*, 570 N.E.2d 937 (Ind.Ct.App.1991), *affirmed*, 580 N.E.2d 244 (Ind.1991), *cert. denied*, 503 U.S. 1007, 112 S.Ct. 1767, 118 L.Ed.2d 428 (1992). We examined Indiana Code §§ 35–38–2–1 and 2–3 and determined that the language "at any time" permitted the trial court to terminate probation before a defendant had completed serving his sentence or to revoke probation before the defendant entered the probationary phases of his sentence. *Id.* at 939. We noted that the grant of probation is a conditional liberty, not a right, and concluded that the terms of Ashba's probation "attached to his suspended sentence from the moment the sentence was imposed." *Id.* at 940.

Additionally, in *Johnson v. State*, 606 N.E.2d 881 (Ind.Ct.App.1993), we determined that the trial court may revoke a defendant's probation for a violation of placement, even if the violation occurs before the defendant enters the probationary phase of his sentence. In *Johnson*, although the defendant had not yet entered the probationary phase of his sentence, we upheld the trial court's order revoking the defendant's probation and committing him to the Department of Correction for his entire five year sentence based on a violation of his community corrections program placement. *Id.* at 882.

In *Childers v. State*, 656 N.E.2d 514 (Ind.Ct. App.1995), *trans. denied*, despite the changes in Indiana Code § 35–38–2–3(g) dealing with probation violations, we reaffirmed our determination that a trial court may revoke a defendant's probation before he has entered the probationary phase of his sentence. The relevant portion of this section of the statute remains unchanged since *Childers*.

fendant's placement in a community corrections program." *Id.* at 1002–03.

In *Payne v. State*, 515 N.E.2d 1141 (Ind. Ct.App.1987), we found that the trial court improperly admitted hearsay evidence over proper objection in a probation revocation hearing. Although we agreed with the State that probation revocation hearings were civil in nature and that probationers were not entitled to the full array of constitutional rights afforded at trial, we noted that the hearsay exclusion rule applied in civil proceedings was not altered. *Id.* at 1144. In holding that the evidence was not admissible under a lowered standard for probationers, we concluded that there was "no rationale for treating a probationer with less deference than a civil litigant." *Id.*

■ Therefore, we hold that the hearsay exclusion rule applies to hearings to revoke placement in a community corrections program, as well as probation revocation hearings.

■ We find that Witham's test results constituted hearsay, and the trial court erred in overruling Cox's objection. Hearsay is an out-of-court statement offered into evidence to prove the facts as represented by the statement. Ind.Evidence Rule 801(c); *Matusky v. Sheffield Square Apartments*, 654 N.E.2d 740, 741 (Ind.1995). To prove that Cox violated his work release rules by using an illegal drug, marijuana, the State sought to introduce Witham's out-of-court statement, the test results, indicating that Cox tested positive for cannabinoids. Surratt testified that he did not prepare Exhibit 1 and had no first hand knowledge of its contents. Given that the State does not assert that the urine test results were admissible pursuant to any hearsay exception,[4] we conclude that

Exhibit 1 provides no proof of the matters contained in the report.

This conclusion divests the record of sufficient substantive evidence to support revocation of Cox's placement at the work release center. The trial court's statement, that it was admitting the results for the purpose of showing why Surratt violated Cox's work release and found him unacceptable for the program, does not alter the fact that the trial court was required to independently determine that Cox violated his work release rules.[5]

■ The trial court's admission of the test results to show why Surratt found Cox in violation of his work release and unacceptable for placement does not provide evidence to the court on which to base a revocation of placement. Although the trial court afforded Cox a hearing, the inadmissibility of Witham's test results rendered the trial court's revocation of placement nothing more than a deferral to an administrative decision made by Surratt as the operations manager of the work release center. As we stated in *Million, supra*, the language in Indiana Code § 35–38–2.6–5(3) which allows the court to revoke the placement after a hearing means that "only the trial court may revoke the placement for a violation of those terms. Program personnel may not make that decision subject merely to judicial review." *Million*, 646 N.E.2d at 1002.

Accordingly, we are compelled to reverse the trial court's order revoking Cox's placement in work release.

HOFFMAN and STATON, JJ., concur.

---

4. The State bases its argument for upholding the trial court's admission of Exhibit 1 on the contention that Indiana Rule of Evidence 802, providing that hearsay is not admissible except as provided by law or by the rules, is inapplicable to probation hearings. The State's only reference to a possible hearsay exception is its statement that the State was not required to lay a foundation for the business records exception. Appellee Brief at 7.

5. Although the trial court did not provide its reason for revoking Cox's placement in its written order, Record at 22, the trial court stated at the hearing: "Based upon the testimony here today that, ah, the Work Release Co-ordinator has determined that he violated his conditions of work release and he's no longer acceptable in their program.[sic] Ah, the Court changes the, ah, place of incarceration from the Work Release Facility to the Indiana Department of Corrections, ...." Record at 47.