John Edward COX, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 48S02–9802–CR–93

Supreme Court of Indiana.

March 3, 1999.

Christopher A. Cage, Anderson, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Carol A. Nemeth, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

Defendant John Cox's placement in the Madison County Work Release Center was revoked based on hearsay evidence from the work release center director concerning marijuana use. The Court of Appeals found the hearsay evidence inadmissible. Because strict evidentiary standards do not apply in community corrections placement revocation hearings, this evidence was admissible. Accordingly, we affirm the trial court.

### Background

On February 9, 1995, a jury convicted Defendant of three counts of dealing in marijuana, all class A misdemeanors,[1] and one count of dealing in a schedule I controlled sub-

stance, a class B felony.[2] On March 6, 1995, Defendant was sentenced to concurrent sentences totaling ten years. The trial court ordered the first four years to be served on in-home detention and the remaining six years on probation. On September 16, 1996, after Defendant admitted that he had violated the terms of his in-home detention, the trial court revoked both the in-home detention and probation. It ordered Defendant to serve the remainder of his entire sentence in the Madison County Work Release Center, a community corrections program.[3]

Following Defendant's placement in the work release center, David Surratt ("Surratt"), the operations manager of the work release center, filed with the trial court a "Notice of Violation of Work Release Rules" alleging that Defendant had submitted a urine sample on November 4, 1996, which subsequently tested positive for cannabinoids (marijuana). At an evidentiary hearing on December 16, 1996, Surratt testified as the sole witness for the State. As part of his testimony, he identified State's Exhibit 1 ("Exhibit 1") as the positive urine test results received from the Witham Memorial Hospital Toxicology Laboratory. Defendant challenged the admission of Exhibit 1, arguing that it was hearsay and that there was no foundation for its admission. Over these objections, the trial court admitted Exhibit 1, later indicating that it was admitted to show the reason Surratt filed the "Notice of Violation of Work Release Center Rules," but not for its truth or falsity. Based on Surratt's testimony, the trial court found that Defendant violated the conditions of his work release and ordered him committed to the Department of Correction for the duration of his sentence.

The Court of Appeals reversed, concluding that (1) Exhibit 1 was inadmissable hearsay in a community corrections placement revocation hearing and (2) without Exhibit 1, the

---

1. Ind.Code § 35-48-4-10 (1995 Supp.).

2. Ind.Code § 35-48-4-1 (1995 Supp.).

3. As noted in the text, the trial court revoked the in-home detention and probation provisions of his original sentence on September 16, 1996. Defendant did not appeal those determinations at

that time. The appeal that is the subject of this opinion arises from the trial court's subsequent revocation of Defendant's placement in work release. To the extent Defendant now claims that the trial court improperly revoked his probation in the earlier proceeding, that claim is waived as not timely.

evidence was insufficient to support the revocation. *Cox v. State*, 686 N.E.2d 181, 185 (Ind.Ct.App.1997).

## Discussion

We agree with the Court of Appeals that Exhibit 1, the urine test results, constituted hearsay and that without Exhibit 1 there was insufficient evidence to support revocation.[4] However, we disagree that the admission of this evidence in a community corrections placement revocation hearing constituted error.

## I

■ For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program[5] the same as we do a hearing on a petition to revoke probation. *Brooks v. State*, 692 N.E.2d 951, 953 (Ind.Ct.App.1998). The similarities between the two dictate this approach.[6] Both probation and community corrections programs serve as alternatives to commitment to the Department of Correction and both are made at the sole discretion of the trial court. *Million v. State*, 646 N.E.2d 998, 1001 (Ind.Ct.App.1995). A defendant is not entitled to serve a sentence in either probation or a community corrections program. Rather, placement in either is a "matter of grace" and a "conditional liberty that is a favor, not a right." *Id.* at 1002 (quoting *Gilfillen v. State*, 582 N.E.2d 821, 824 (Ind. 1991)).

It is well settled that probationers are not entitled to the full array of constitutional rights afforded defendants at trial. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Isaac v. State*, 605 N.E.2d 144 (Ind. 1992). But "[t]he Due Process Clause of the Fourteenth Amendment [does] impose[ ] procedural and substantive limits on the revocation of the conditional liberty created by probation." *Braxton v. State*, 651 N.E.2d 268, 269 (Ind.1995) (citing *Black v. Romano*, 471 U.S. 606, 610, 105 S.Ct. 2254, 2257, 85 L.Ed.2d 636 (1985)); *accord, Gagnon*, 411 U.S. at 782, 93 S.Ct. 1756; *Isaac*, 605 N.E.2d at 148. In the probation revocation context, this court has described a defendant's due process rights as follows:

> There are certain due process rights, of course, which inure to a probationer at a revocation hearing. These include written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine witnesses, and a neutral and detached hearing body. Indiana Code § 35–38–2–3(e) [7] also ensures the probationer the right to confrontation, cross-examination, and representation by counsel.

*Isaac*, 605 N.E.2d at 148 (citations omitted).

■ We hold that the due process requirements expressed by this court for probation revocations are also required when the trial court revokes a defendant's placement in a community corrections program. *Accord Million*, 646 N.E.2d 998. *Cf. Young v. Harper*, 520 U.S. 143, 117 S.Ct. 1148, 1150, 137

---

4. In this regard, we disagree with the trial court's determination that Exhibit 1 was admitted for a reason other than to show the truth of matter asserted, namely that Defendant's urine had tested positive for cannabinoids. In point of fact, Exhibit 1 was the only evidence that Defendant had violated the terms of his work release placement.

5. A "Community Corrections Program" is defined by statute as "a program consisting of residential and work release, electronic monitoring, day treatment, or day reporting that is: (1) operated under a community corrections plan of a county and funded at least in part by the subsidy provided under IND.CODE 11–12–2; or (2) operated by or under contract with a court or county." Ind.Code § 35–38–2.6–2 (1995 Supp.).

6. In this opinion, we hold that appellate review procedures, due process requirements, and evidentiary rules for probation revocation and community corrections placement revocation hearings are the same. But there may be other matters related to community corrections and probation which the law will not treat in the same way.

7. Ind.Code § 35–38–2–3(e) provides that "[t]he state must prove the violation by a preponderance of the evidence. The evidence shall be presented in open court. The person is entitled to confrontation, cross-examination, and representation by counsel."

L.Ed.2d 270 (1997) (state conditional prison release program sufficiently similar to parole to invoke Due Process protections described in *Morrissey* ). As a result, a defendant in a community corrections program is entitled to representation by counsel, written notice of the claimed violations, disclosure of the opposing evidence, an opportunity to be heard and present evidence, and the right to confront and cross-examine witnesses in a neutral hearing before the trial court.

■ After a careful review of the record, we find that the trial court accorded Defendant his rights under the Due Process Clause and the Indiana statute at each stage of the revocation proceedings.[8]

## II

■ At the same time, a probation or community corrections placement revocation hearing is not to be equated with an adversarial criminal proceeding. *Isaac,* 605 N.E.2d at 149 (citing *Gagnon,* 411 U.S. at 789, 93 S.Ct. at 1763). Rather, it is a narrow inquiry, and its procedures are to be more flexible. *Id.* (citing *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604). This is necessary to permit the court to exercise its inherent power to enforce obedience to its lawful orders. *Id.*

There are also sound policy justifications for such flexibility. Alternative sentences such as probation and community corrections serve the humane purposes of avoiding incarceration and of permitting the offender to meet the offender's financial obligations. But for sentencing alternatives to be viable options for Indiana judges, judges must have the ability to move with alacrity to protect public safety when adjudicated offenders violate the conditions of their sentences. Put differently, obstacles to revoking an alternative sentence may diminish the likelihood of community corrections placements being made in the first place.

■ We have previously held that, precisely because probation revocation procedures are to be flexible, strict rules of evidence do not apply. *Isaac,* 605 N.E.2d at 148–149. We have now codified this conclusion in our evidence rules which provide, in relevant part, that "[t]he rules, other than those with respect to privileges, do not apply in ... [p]roceedings relating to ... sentencing, probation, or parole." Ind. Evidence Rule 101(c). In particular, we hold that the evidence rules implicated in this case—the rule against hearsay and the definitions and exceptions with respect thereto—do not apply in proceedings relating to sentencing, probation, or parole.[9] Applying our earlier

8. Defendant suggests that the admission of testimony regarding the urinalysis results denied him his due process right to confront and cross examine all witnesses against him. (Appellant's Br. at 7). We find that the use in a probation revocation hearing of a regular urinalysis report prepared by a company whose professional business it is to conduct such tests does not infringe upon a probationer's confrontation rights. *United States v. Bell,* 785 F.2d 640, 643 (8th Cir.1986). *United States v. Penn,* 721 F.2d 762, 765–66 (11th Cir.1983).

As to the general question of when hearsay evidence introduced at a probation revocation hearing violates the probationer's confrontation rights, courts addressing the matter have taken different approaches. *Compare Harris v. United States,* 612 A.2d 198, 201–02 (D.C.App.1992) (concluding that "[a]ll that is required before admitting evidence at probation revocation hearing is a determination that the proffered evidence is reliable") *with State v. Austin,* 165 Vt. 389, 685 A.2d 1076, 1081 (1996) (adopting a balancing test in probation revocation hearings as a part of which "a trial court must make an explicit finding, and must state its reasons on the record,

whether there is good cause for dispensing with the probationer's confrontation right and admitting hearsay into evidence"). *See also Egerstaffer v. Israel,* 726 F.2d 1231, 1234 (7th Cir.1984) (enunciating a balancing test similar to that adopted in *Austin,* but concluding that "if the proffered evidence itself bears substantial guarantees of trustworthiness, then the need to show good cause vanishes"). We need not adopt a particular approach here both because it is unnecessary to resolve this case and because the parties do not argue the question.

9. Several federal circuits and states have adopted this same approach. *See United States v. Bell,* 785 F.2d 640, 642 (8th Cir.1986) (admitting laboratory report containing probationer's urinalysis results at a probation revocation hearing); *Egerstaffer v. Israel,* 726 F.2d 1231, 1234 (7th Cir.1984) (admitting a witness' recorded and unsworn interview in a probation revocation hearing); *United States v. Penn,* 721 F.2d 762, 763 (11th Cir.1983) (admitting police officer's testimony as to field test and laboratory test which indicated the presence of cocaine); *State v. Rivera,* 116 Ariz. 449, 569 P.2d 1347 (1977) (admit-

conclusion that the procedural rules applicable in community corrections placement revocation hearings are the same as in probation revocation hearings, we hold that the Indiana Rules of Evidence in general and the rules against hearsay in particular do not apply in community corrections placement revocation hearings.[10]

■ Further, we hold that in probation and community corrections placement revocation hearings, judges may consider any relevant evidence bearing some substantial indicia of reliability.[11] This includes reliable hearsay. Judges are not, of course, bound to admit all evidence presented to the court. In fact, the absence of strict evidentiary rules places particular importance on the fact-finding role of judges in assessing the weight, sufficiency and reliability of proffered evidence. This assessment, then, carries with it a special level of judicial responsibility and is subject to appellate review. Nevertheless, it is not subject to the Rules of Evidence (nor to the common law rules of evidence in effect prior to the Rules of Evidence).

### III

Defendant argues that there was no probative evidence properly before the trial court

to support its finding that the State had carried its burden of proof by a preponderance of the evidence. (Appellant's Br. at 8) As a result, he contends that the trial court erred in ordering the revocation of his placement in the work release program.

■ Our standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation. *Brooks,* 692 N.E.2d at 953. A probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence. *Braxton v. State,* 651 N.E.2d 268, 270 (Ind.1995). We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation. *Id.* (citing *Menifee v. State,* 600 N.E.2d 967, 970 (Ind. Ct.App.1992)).

■ As a condition of his placement in the work release center, Defendant was prohibited from engaging in the use of any

ting laboratory reports as part of probation officer's testimony); *Commonwealth v. Smith,* 38 Mass.App.Ct. 324, 647 N.E.2d 444 (Mass.1995) (admitting probation officer's testimony as to convictions occurring after probationary period); *State v. Labbe,* 617 A.2d 1023 (Me.1992) (admitting hearsay testimony of probation officer at revocation hearing).

10. In its opinion, the Court of Appeals relied upon its decision in *Payne v. State,* 515 N.E.2d 1141 (Ind.Ct.App.1987), where it held that hearsay evidence is inadmissable in probation revocation proceedings. *Payne* is disapproved for two reasons. First, *Payne* was decided prior to the adoption of the Indiana Rules of Evidence, which do not apply to probation revocation hearings. Evid. R. 101(c)(2) (1998). Second, a proper statement of the rule on this issue was articulated by this Court in *Isaac,* where we held that the "formal procedural and evidentiary rules required at criminal trials are not required at probation revocation hearings." *Isaac,* 605 N.E.2d at 147–148.

11. We note that subsection (a) of Rule 101, addressing the general applicability of the Indiana Rules of Evidence, provides in part that "[i]f

these rules do not cover a specific evidence issue, common or statutory law shall apply." Ind.Evidence Rule 101(a). This language has led some judges on the Court of Appeals to reason that because subsection (c) provides that the Rules of Evidence do not apply to probation revocation proceedings, subsection (a) makes common law evidence rules applicable to such proceedings. And, these judges conclude, because hearsay was not admissible at common law, the common law rule against hearsay "trumps" the subsection (c) exclusion. *See Jones v. State,* 689 N.E.2d 759, 763 (Ind.Ct.App.1997) (Sullivan, J., concurring and dissenting). We previously vacated a decision of the Court of Appeals containing such reasoning. *Greer v. State,* 685 N.E.2d 700 (Ind. 1997), *vacating* 669 N.E.2d 751 (Ind.Ct.App. 1996). We now expressly disapprove this reasoning. To hold that the common law rule against hearsay applies in probation revocation hearings would render subsection (c) meaningless. And it ignores the fact noted in the text above—that prior to the adoption of the Rules of Evidence, the common law permitted hearsay evidence in probation revocation proceedings. *Isaac v. State,* 605 N.E.2d 144, 147–48 (Ind.1992) ("Formal ... evidentiary rules required at criminal trials are not required at probation revocation hearings.").

illegal drugs. The State presented evidence that Defendant tested positive for marijuana use, admitting into evidence results of a urinalysis conducted by an independent toxicology laboratory. As we have discussed *supra*, the hearsay exclusion rule is not applicable in these proceedings, and the trial court may consider all relevant evidence, including reliable hearsay. With the admission of this evidence, the State has presented sufficient evidence to support the trial court's revocation of Defendant's placement at the work release center.[12]

### Conclusion

Having previously granted transfer, thereby vacating the decision of the Court of Appeals, Ind. Appellate Rule 11(B)(3), we now affirm the trial court's revocation of Defendant's placement in the Madison County Work Release Center.

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur.

---

**12.** Because it reversed the trial court's revocation of Defendant's work release placement on evidentiary grounds, the Court of Appeals did not address certain other claims made by Defendant. First, Defendant claims that he did not have notice of the terms of his work release placement and that he was not provided with written notice of the work release violation. As to the former, we find the record clear that Defendant was advised of the terms of his placement. (R. at 37.) As to the latter, we find that Defendant did not object to lack of written notice at the hearing and has failed to preserve this issue for appeal. *Bryce v. State*, 545 N.E.2d 1094, 1096 (Ind.Ct. App.1989), *trans. denied.* Second, Defendant claims that the trial court abandoned its role as neutral fact-finder when the court questioned a witness. Again, Defendant did not object to the trial court's questioning and has failed to preserve this issue for appeal. *Bryce*, 545 N.E.2d at 1096. We find no grounds for relief.