**Jeanette BRANTLEY, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A05–0111–PC–511.**

Court of Appeals of Indiana.

June 11, 2002.

Stephen G. Drendall, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Jeanette Brantley (Brantley), appeals from the trial court's denial of her Motion to Refund Fees and Costs.

We affirm.

### ISSUE

After being convicted of attempted battery by body waste, Brantley participated in a community corrections program in lieu of being incarcerated. When this court reversed her conviction, Brantley requested reimbursement for the court-assessed fees and costs that she had paid to the St. Joseph County Community Corrections Center for her supervision. On appeal, Brantley raises one issue on review, which we restate as follows: whether the trial court properly denied her Motion to Refund Fees and Costs

### FACTS AND PROCEDURAL HISTORY

On July 6, 1999, the State filed an information against Brantley charging her with Count I, attempted battery by body waste, a Class D felony, Ind.Code § 35–42–2–6 and I.C. § 35–41–5–1; Count II, disorderly conduct, a Class B misdemeanor, I.C. § 35–45–1–3; and Count III, habitual offender, I.C. 35–50–2–8. We adopt the statement of facts as set forth in *Brantley v. State,* No. 71 A03–0010–CR–00365, 748 N.E.2d 447, slip. op. (Ind.Ct.App. May 30, 2001).

On February 20, 1999, at approximately 9:20 p.m., the South Bend Police Department dispatched Corporal Thomas Williams to the Park Jefferson Apartments. When Corporal Williams arrived at the apartments, Brantley was standing in the parking lot, screaming at someone. Brantley was bleeding from either her nose or mouth and yelling vulgarities. Corporal Williams handcuffed Brantley, placing her hands behind her back. He also placed her in the back seat of his squad car to transport her to the county jail. A Plexiglas barrier separated the back seat from the front seat of the squad car.

During the drive to the jail, Corporal Williams heard Brantley clear her throat or sinuses and heard her spit. He requested that she not spit in his car because he would have to clean up any mess that was made. When they reached the jail, Corporal Williams opened Brantley's door, and she exited the vehicle. While she was leaving the car, Corporal Williams heard her clear her sinuses again and saw her cheeks "pop out." Corporal Williams described the situation by saying that she was

"looking at me as if she's ... going to let go with it into my face." Record at 293. In order to avoid being spit on, Corporal Williams pushed Brantley's face away from him. Brantley relented and did not spit on him.

When Corporal Williams returned to his squad car, he found blood and spit on the back seat, the doors, and the Plexiglas barrier above where his right shoulder had been. He took photographs of the blood splattered on the back seat and the doors.

Brantley was charged with attempted battery by body waste, disorderly conduct, and being a habitual offender. The State dismissed the disorderly conduct charge. Trial was held on the attempted battery by body waste charge. Brantley was convicted by the jury of attempted battery by body waste. Subsequently, Brantley pleaded guilty to being a habitual offender.

On May 25, 2000, Brantley was sentenced on Count I for a period of one (1) year and on Count III for a period of four (4) years. These sentences were to be served consecutively. However, the trial court split Brantley's sentence by placing her in the St. Joseph's community corrections program for Count I and putting her on probation for Count II. The trial court also assessed court costs in the amount of $127.50, and a public defender fee in the amount of $100.00.[1]

On May 30, 2001, this court reversed Brantley's conviction, holding that "because the prosecution presented evidence of two separate acts while charging Brantley with only one count, we were unable to determine whether the jury reached a unanimous verdict." (Appellant's App. p.

13). Accordingly, we vacated Brantley's conviction for attempted battery by body fluid. On August 24, 2001, our supreme court denied transfer.

Pursuant to the trial court's order, Brantley paid the St. Joseph County Community Corrections Center a total of $2,415.00 from the time she was sentenced until the time her conviction was vacated. On July 5, 2001, Brantley filed her Motion to Refund Fees and Costs. On September 10, 2001, the trial court denied her Motion to Refund Fees and Costs. The trial court's Order Denying Defendant's Motion For Refund of Costs and Fees, in pertinent part, stated:

7. The St. Joseph's County Community Corrections Center has advised the Court that the defendant had made payments totaling $2,415.00 for her supervision on home detention as ordered by the Court.

8. The Court, pursuant to the Opinion of the Indiana Court of Appeals, has entered an Order terminating the defendant from Probation and supervision and has vacated the convictions entered herein.

9. Neither the defendant nor the State have provided the Court with any authority supporting any position in this matter, nor can the Court find any authority concerning the granting or denial of the defendant's Motion.

Accordingly, the defendant having been convicted by a jury, Judgment of Conviction having been entered based upon that conviction, defendant having been lawfully sentenced as a result of that conviction, the defendant having exercised her Appellate rights, ultimately being successful, the Court can see no

---

1. Brantley paid the public defender fee of $100.00 and concedes that this fee was legiti- mately assessed even upon her acquittal.

reason for or vehicle by which it has authority to order St. Joseph County Community Corrections Center or Saint Joseph County, in general, to reimburse the defendant for expenditures herein. As such the defendant's motion is denied.

(Appellant's App. p. 6).

Brantley now appeals.

## DISCUSSION AND DECISION

Brantley argues that the trial court improperly denied her Motion to Refund Fees and Costs. Specifically, Brantley maintains "a defendant cannot be required to pay fees for community corrections services when her conviction and sentence have been vacated." (Appellant's Brief p. 3). Additionally, Brantley asserts that wrongly served incarceration cannot be undone, but the fees she was required to pay for community corrections services and court costs can be undone by refunding them to her.

 The Community Corrections Program was established by our legislature in order to encourage counties to develop and operate "a coordinated local corrections-criminal justice system" as an effective alternative to imprisonment at the state level. Ind.Code § 11–12–2–1. The program is designed for (1) the prevention of crime or delinquency; (2) persons sentenced to imprisonment in a county or local penal facility other than a state-owned or operated facility; or (3) committed offenders. I.C. § 11–12–1–2. A community corrections program consists of "residential and work release, electronic monitoring, day treatment, or day reporting." I.C. § 35–38–2.6–2. Because it is community-based and serves as an "alternative to commitment to the department of correction;" placement in a community corrections program is not a commitment to the Department of Correction. *Cox v.*

*State,* 706 N.E.2d 547, 549 (Ind.1999). The decision to order placement in a community corrections program is made at the sole discretion of the trial court. *Id.* A defendant is not entitled to serve a sentence in a community corrections program; rather, placement is a "matter of grace" and "a conditional liberty" that is a favor, not a right. *Id.*

Moreover, the user fees collected by a community corrections program are governed by I.C. § 11–12–2–12. This section, in pertinent part, provides that:

> (a) A community corrections fund is established in each community having a community corrections program. The fund shall be administered by the community corrections advisory board in accordance with rules adopted by the department under subsection (c). The expenses of administering the fund shall be paid from money in the fund. Money in the fund at the end of a fiscal year does not revert to any other fund. The fund consists of fees deposited under subsection (b). Money in the fund may be used only for the provision of community corrections program services. . . .

> (b) In addition to user fees collected under IC 31–40, IC 35–38–2–1, or any other user fee collected from a participant in a community corrections program by an agency or program, a community corrections program may collect from a participant a user fee assessed in accordance with rules adopted under subsection (c). Community corrections user fees collected under this section shall be deposited into the community corrections fund established by this section.

I.C. § 11–12–2–12.

Here, Brantley asserts that the imposition of the community corrections program

and its fees was a sentence imposed upon her by the trial court without, as determined later, a conviction under correct application of law. Therefore, Brantley maintains that as her conviction was reversed, so should her sentence. Thus, Brantley believes that she never owed St. Joseph's Community Corrections Center $2,415.00, and that she is entitled to a refund.

However, Brantley's community corrections sentence was an alternative to incarceration based on the fact that a jury convicted her of attempted battery by body waste. She was required to pay the community corrections costs in order to remain in the community corrections program and out of prison. The fees associated with the community corrections program are intended to maintain the program. As stated above, I.C. § 11–12–2–12 deals with community corrections funds. I.C. § 11–12–2–12(a) states that money in the fund may be used only for the provision of community corrections programs. Further, I.C. § 11–12–2–12(b) specifically states that community corrections user fees may be collected and shall be deposited into the community corrections fund. Clearly, the statute indicates that the sole purpose of the fees is to maintain the program.

In this case, we find that Brantley benefited from the fees she paid to the St. Joseph's County Community Corrections Center. In return for the fees Brantley paid, she received supervisory services. Presumably, she received or could have received some rehabilitative benefit from these services. Additionally, Brantley avoided incarceration with her placement and chose not to pursue a stay of her sentence pending appeal.

On the other hand, the community corrections program expended time and resources to provide these supervisory services to Brantley. To refund these fees to Brantley would be inequitable to the community corrections program, as it would not be compensated for the benefits derived by Brantley from the program's service.

 With the above in mind, it is our determination that the trial court did not abuse its discretion when it denied Brantley's Motion to Refund Fees and Costs, as Brantley received benefits from the community corrections program. Her placement in the community corrections program was a privilege, not a right. *Cox*, 706 N.E.2d at 549. Thus, the fees that Brantley paid were correct.

Affirmed.

MATTINGLY–MAY and VAIDIK, JJ., concur.