## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 19 2018, 10:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Theodore Brown,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | February 19, 2018<br><br>Court of Appeals Case No.<br>02A03-1709-CR-2147<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Wendy Davis, Judge<br><br>Trial Court Cause No.<br>02D06-1205-FC-144 |

**Brown, Judge.**

[1] Theodore Brown appeals the trial court's order revoking his probation. Brown raises one issue which we restate as whether the evidence is sufficient to support the revocation of his probation. We affirm.

## Facts and Procedural History

[2] On May 2, 2012, the State charged Brown with two counts of child molestation as class C felonies. On July 5, 2012, Brown pled guilty pursuant to a plea agreement to one count of child molestation as a class C felony. On August 20, 2012, the court imposed a four-year suspended sentence and placed Brown on probation for two years. According to the plea agreement, Brown's sentence was ordered to run consecutive to a six-year sentence imposed in a separate cause number but pursuant to the same plea agreement. The addendum order of probation, also filed on August 20, 2012, stated:

> 3. You shall attend, actively participate in, and successfully complete a certified sexual perpetrator treatment program that utilizes polygraph testing in order to ensure compliance with the Addendum Order of Probation. Responsibility for payment of fees required for treatment, including polygraph testing, will be yours. Unsuccessful termination from treatment or noncompliance with treatment conditions will be considered a violation of your probation.

Appellant's Appendix at 51.

[3] On October 2, 2012, probation officer Ryan Koch filed a verified petition for revocation of probation which alleged that Brown did not successfully complete the Allen County Community Control Program, did not maintain good

behavior, violated Rule No. 11 of the addendum order of probation as he possessed a cellular phone with internet access on or about September 26, 2010, and had a urine screen positive for marijuana at his intake on August 23, 2010. On October 18, 2012, the court held a hearing on the petition where Brown admitted the violation of probation. The court issued an order for Brown to return to probation subject to the August 20, 2012 conditions, and noted on the order that the "probation period is 4 years." *Id.* at 62.

[4] On March 1, 2017, Brown signed a document from Headwaters Counseling in Fort Wayne ("Headwaters") titled, "Zero Tolerance Agreement," which stated he "agree[d] to the following conditions to continue in services at Headwaters," that "[s]essions at Headwaters are a probation requirement," that "[a]ll other agency and group rules will be followed consistently," that there was "[n]o unexcused absences" and "[a]ll excused absences must have documentation . . . and prior approval," and that Brown understood "that the first time I break this policy I will be terminated from services." State's Exhibit 3.

[5] On April 19, 2017, a stipulation of probation modification agreement was filed, which stated that, because Brown had not completed sexual perpetrator counseling, he agreed to extend his probation period for one year, or until he "successfully complete[d] the program," and that he agreed to comply with the condition of probation in addition to the existing rules of probation ordered on August 20, 2012. *Id.* at 106.

On May 3, 2017, Ruth Bracht, a licensed clinical social worker at Headwaters who specialized in working with individuals who have sex offender issues, addressed a letter to Koch, which indicated that Brown had "been suspended, pending termination from the Sexual Offenders Treatment Program" and stated in part:

> [Brown] has taken and failed four different Sexual History Polygraphs during his time in the program. The exams were completed on the following dates: 5-5-16; 8-10-16; 12-28-16; and 4-21-17. [Brown] passed three of his maintenance polygraphs on the following dates: 10-19-15; 4-14-16; and 10-10-16. However, he recently failed to show for two maintenance polygraphs on the following dates: 4-10-17 and 5-1-17.
>
> Therapist was meeting with [Brown] (individually) more frequently to help prepare him to pass and work through any denial that was creating a barrier to having a truthful polygraph. It was explained to [Brown] that if he did not pass the fourth Sexual History Polygraph, he would be brought back before the judge to decide what sanctions would be appropriate.
>
> On 3-1-17, [Brown] signed a Zero Tolerance Agreement. The agreement specifically targeted his attendance. He agreed to communicate in more detail with both the group therapist and the individual therapist when his [sic] is absent. The bottom line of the agreement states: All other agency and group rules will be followed consistently.
>
> [Brown] is suspended, (pending termination) from the program based on not complying with the following rules in the group agreement:
>
>> I. You will complete all assignments and homework assigned by your therapist.

> [Brown] was instructed to have a truthful Sexual History polygraph. He was given four opportunities and did not complete this assignment.
>
> N. A polygraph test(s) may be administered by a third party if it is determined appropriate by the treatment team. Results of this test will affect the course of your treatment.
>
> After reviewing this case, there is still question about whether [Brown] has been completely forthcoming about who his victims are and how many there have been. It is difficult, if not impossible, to do the tasks adequately without full disclosure. Without total honesty, the group members do not get the full picture of [Brown's] choices and actions. There is a missing piece in the accountability needed for maximum treatment benefit.

State's Exhibit 4.

[7] On May 10, 2017, Koch filed a verified petition for revocation of probation, which alleged that Brown did not "successfully complete sexual perpetrator's counseling in violation of Rule #3 of the Addendum Order of Probation," and on August 18, 2017, the court held a hearing on the petition. *Id.* at 107. At the hearing, Koch was shown the order of probation by the prosecutor and asked if he knew about the initials and date of "4/30/15" appearing in bolder ink next to the signatures, to which he responded:

> Those are [Brown's] initials. I did this because these original rules were signed in 2012 at his original sentencing, and when he was released from the Department of Corrections on the previous case, I had him after we went over them a second time – third time, I had him initial those to acknowledge those.

Transcript Volume 2 at 8. Koch testified that the initials were placed on the document in his presence. When he was shown the addendum order of probation, Koch testified that the addendum contained separate rules for sex offenders who are sentenced for a sex offense and that the addendum shown to him also had Brown's "initials on the bottom right on the same date that he signed them in [Koch's] presence." *Id.* at 9. He also testified that Brown enrolled in and began a certified sexual perpetrator treatment program at Headwaters, that he had come to know Bracht who was Brown's assigned treatment provider, that at some point he became aware that Brown was falling out of compliance and the compliance issue started with Brown's attendance, that the sexual history polygraphs required by the addendum order of probation were required "to determine the offending behavior of any current victims you may have, any past victims that you may have that's important for the treatment, the course of the treatment," that Brown "began to fail the sexual history polygraphs," and that he and the treatment provider attempted to address the noncompliance informally without filing a violation. *Id.* at 15.

[8] Koch testified that he believed that the reason for the March 1, 2017 agreement was that "after another failed polygraph [Brown] began having some attendance issues with treatment." Transcript Volume 2 at 22. He also testified that he and Bracht verbally discussed with Brown his obligations with respect to the polygraphs, that he became aware that Brown had again failed a polygraph and believed the failure to have occurred on April 21, 2017, and that he received communication from Headwaters indicating they did not feel that they

could work with Brown further.  The court and Koch had the following exchange regarding the March 1, 2017 agreement and the May 3, 2017 letter:

> THE COURT: [J]ust so I'm clear, [the March 1, 2017 agreement] is signed by [Brown] who says that all excused absences must have documentation, nurse note, funeral and have prior approval correct?
>
> KOCH: That is correct.
>
> THE COURT: Okay.  So that was at –  to [counsel for Brown's] point, that was for attendance, the no tolerance.
>
> KOCH: Okay.
>
> THE COURT: Am I right?
>
> KOCH: I – yes.
>
> THE COURT: Okay.  So in the — I just want to confirm in [the May 3, 2017 letter] then you as the probation officer got information from [Bracht] that [Brown] was not in compliance with the zero tolerance agreement correct?  Because she says he failed to show up for two maintenance polygraphs.
>
> KOCH: That's correct.
>
> THE COURT: Okay.  So he failed to show up those two times, and did he have any written documentation as outlined in [the March 1, 2017 agreement]?
>
> KOCH: Not from the information that was provided to me.
>
> THE COURT: Okay. All right.
>
> THE COURT: Any follow-up from counsel?

Transcript Volume 2 at 33-34.

[9] Brown testified that his probation was extended on March 1, 2017, for six months because he failed to attend meetings or was not complete with classes. He also testified that he notified Bracht that he was unable to attend the two polygraph meetings by calling from his work line, he provided Bracht with his manager's number and extension, and he did not bring a note from his employer on letterhead to Bracht for the absences on April 10 and May 1. After the hearing, the court ordered Brown's probation revoked.

## *Discussion*

[10] The issue is whether the evidence is sufficient to support the revocation of Brown's probation. Brown argues that insufficient evidence supported the court's finding. Specifically, he contends that the language in the May 3, 2017 letter indicating "suspended, pending termination" falls short of a final conclusion that Brown did not successfully complete sexual perpetrator counseling and additional language in the letter left open the possibility that Brown's shortcomings in the program could be corrected, and that Rule 3 of the addendum order of probation does not mention that a probationer is required to pass the polygraph examinations. Appellant's Brief at 11.

[11] The State argues that Brown violated his probation by having two unexcused absences for maintenance polygraph tests after having entered into a zero tolerance agreement for unexcused absences and that Brown failed to provide a truthful sexual history polygraph test after being told by Koch and his treatment provider that it was a condition for successful completion of his treatment program and having been granted four opportunities to do so by his therapist.

[12] Probation is an alternative to commitment in the department of correction, and is at the sole discretion of the trial court. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999), *reh'g denied*. A defendant is not entitled to serve a sentence on probation. *Id.* Rather, probation is a "matter of grace" and a "conditional liberty that is a favor, not a right." *Id.* Probation revocation is governed by Ind. Code § 35-38-2-3, and a revocation hearing is civil in nature, the State needing only to prove the alleged violations by a preponderance of the evidence. *Id.* at 551. We consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke. *Id.* The violation of a single condition of probation is sufficient to revoke probation. *Wilson v. State*, 708 N.E.2d 32, 34 (Ind. Ct. App. 1999).

[13] The record reveals that, despite having signed the addendum order in 2012 and initialed it again in 2015, Brown began to fall out of compliance at Headwaters. The State presented evidence that Brown failed to show as required for maintenance polygraphs on April 10, 2017, and May 1, 2017, and lacked documentation from his employer. For Brown, compliance with Headwaters's treatment conditions regarding excused absences was expressly conditioned on obtaining approval beforehand and providing documentation afterwards. In light of this and other evidence presented at the hearing, we conclude that the court as a finder of fact could reasonably conclude by a preponderance of the

evidence that Brown violated his probation when he did not comply with the explicit treatment conditions outlined in the March 1, 2017 agreement. *See Lind v. State*, 550 N.E.2d 823, 824 (Ind. Ct. App. 1990) ("The defendant's failure to adhere to the program's attendance policy shows a blatant disregard by the defendant for the trial court's order to undergo counselling and treatment."), *trans. denied*.

### *Conclusion*

[14] For the foregoing reasons, we affirm the court's order revoking Brown's probation.

[15] Affirmed.

Baker, J., and Riley, J., concur.