**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DAVID W. STONE, IV**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana



FILED

Jan 22 2013, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY HENDERSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A04-1207-CR-367 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Rudolph R. Pyle, III, Judge
Cause No. 48C01-0804-FC-214

**January 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Anthony Henderson appeals the revocation of his probation and the reinstatement of his previously suspended sentence. Henderson raises two issues, which we revise and restate as:

I. Whether the evidence is sufficient to support the revocation of Henderson's probation; and

II. Whether the trial court abused its discretion in ordering that Henderson serve his previously suspended sentence.

We affirm.

The facts most favorable to the revocation follow. In April 2008, the State charged Henderson with stalking as a class C felony, and on December 2, 2008, Henderson pled guilty pursuant to a plea agreement in which he agreed to plead guilty to the lesser included offense of invasion of privacy as a class A misdemeanor and to a charge in a separate cause. The court sentenced Henderson to one year suspended to probation, to be served consecutive to his sentences in two other causes.

On April 12, 2012, while Henderson was serving his probationary term, Henderson and his wife Erika were at their house in Anderson, Indiana, along with Erika's sister Kiara and five children under the age of twelve. At some point, Henderson was yelling and calling for Erika's ten-year-old daughter. Erika retrieved a computer from the back of a car, but could not find the cords. She placed the computer on the ground and "was getting up there to get the cords" when Henderson said "[y]ou want to start stuff," and Erika said "I didn't throw anything." Transcript at 7. Henderson then entered the house and grabbed a television from the room of Erika's daughter, and Erika stated "[d]on't do that." Id. Henderson said "[y]ou better back up" and then threw her

2

on the bed and started hitting her in her mouth. Id. He struck her multiple times with a closed fist while holding her neck with his other hand. Kiara attempted to pull Henderson off of Erika and told Henderson to stop and that the children were present.

Henderson stopped striking Erika and carried the television to the garage. Erika went back outside to find the computer cords and showed Henderson that her "mouth was all bloody" and stated "look what you have done to my mouth." Id. at 15. Henderson said "[w]ell [], you shouldn't have threw [sic] the computer." Id.

Henderson followed Erika back inside the house and started going through her purse. He "got [Erika's] bank cards out," Erika "was trying to get [her] wallet from his hands" and said "[g]ive me my stuff," and Henderson said "[y]ou better back up." Id. at 13. Henderson held Erika down on the bed by her throat and struck her in the mouth with his other hand.

Kiara attempted to call the police using her cell phone, but Henderson slapped the phone out of her hand and pushed her over a table. Erika's ten-year-old daughter called 911. Anderson Police Officer Gabe Bailey responded to the 911 call and observed that Erika had blood on her teeth and a cut to her mouth. Henderson had a red mark on one side of his body but otherwise showed no injuries.

On April 17, 2012, the State filed a notice of violation of probation alleging that Henderson violated the conditions of his probation by committing the new criminal offenses of strangulation, domestic battery, and criminal conversion on April 12, 2012. On May 31, 2012, the court held a revocation hearing, at which Erika and Kiara testified as to Henderson's actions assaulting Erika as set forth above and to Erika's injuries of

blood in her mouth and the fact that some of her lower teeth had been loosened. Officer Bailey also testified regarding his observations of Erika's injuries. During his testimony, Henderson stated that Erika had attacked him and in the process caused bleeding to her mouth. Henderson testified that "[i]f [he] had punched [Erika] in the mouth twelve (12) times as she stated she wouldn't have no teeth." Id. at 46. The court found that Henderson violated the terms of his probation and ordered that he serve the entirety of his previously suspended sentence of one year.

I.

The first issue is whether the evidence is sufficient to support the revocation of Henderson's probation. A probation revocation hearing is civil in nature, and the State need only prove the alleged violations by a preponderance of the evidence. Cox v. State, 706 N.E.2d 547, 551 (Ind. 1999), reh'g denied. We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses. Id. If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation. Id. The violation of a single condition is sufficient to revoke probation. Wilson v. State, 708 N.E.2d 32, 34 (Ind. Ct. App. 1999).

Henderson argues that the trial court's findings of violations of the terms of his probation are not supported by the evidence. He argues that, at the revocation hearing, he asserted that he acted in self-defense to an attack by his wife, that his wife's claim "that he instigated the fight and punched her repeatedly is fatally undercut by the lack of

4

injuries that would be present from such a pummeling to the mouth," and that "[t]he minor injuries of the wife make her claim of having been punched 12 times in the face fall under the incredible dubiosity rule." Appellant's Brief at 4. He asserts that he "weighs about 400 pounds and his wife about 220 pounds," that "[i]t is inherently improbable that he could hit his wife 12 times with a closed fist with no more damage than loose teeth and mouth bleeding," and that "the minor injuries of the wife belie the administration of the brutal beating that the wife and her sister sought to portray." Id. at 5.

The State maintains that the evidence was sufficient to show that Henderson violated the terms of his probation and that both Erika and Kiara testified that, during two separate incidents, Henderson choked Erika and struck her in the face. The State further argues that Erika had injuries consistent with being struck in the mouth, including a cut lip, loosened teeth, and bleeding around her teeth. The State's position is that the incredible dubiosity rule is inapplicable in this case because the court is not faced with the testimony of a sole witness and because the testimony of the witnesses was not inherently contradictory.

The requirement that a probationer obey federal, state, and local laws is automatically a condition of probation by operation of law. Williams v. State, 695 N.E.2d 1017, 1019 (Ind. Ct. App. 1998); Ind. Code § 35-38-2-1(b) ("If the person commits an additional crime, the court may revoke the probation.").

When, as here, the alleged probation violation is the commission of a new crime, the State does not need to show that the probationer was convicted of a new crime.

5

Whatley v. State, 847 N.E.2d 1007, 1010 (Ind. Ct. App. 2006). The allegation that a probationer has violated probation "only has to be proven by a preponderance of the evidence." Id. In other words, the evidence need show only that it is more likely true than not true that Henderson engaged in criminal activity. See Demmond v. State, 166 Ind. App. 23, 25, 333 N.E.2d 922, 923-924 (1975).

We also note that, in order to prevail on a self-defense claim, a defendant must demonstrate that he was in a place he had a right to be; did not provoke, instigate, or participate willingly in the violence; and had a reasonable fear of death or great bodily harm. Wilson v. State, 770 N.E.2d 799, 800 (Ind. 2002). The amount of force a person may use to protect himself depends on the urgency of the situation. Harmon v. State, 849 N.E.2d 726, 730-731 (Ind. Ct. App. 2006). However, if a person uses "more force than is reasonably necessary under the circumstances," the person's self-defense claim will fail. Id. at 731. A mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense. Wilson, 770 N.E.2d at 801.

To the extent Henderson asserts that the incredible dubiosity rule requires reversal of his probation revocation, we note that the rule applies only in very narrow circumstances. See Love v. State, 761 N.E.2d 806, 810 (Ind. 2002). The rule is expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so

6

incredibly dubious or inherently improbable that no reasonable person could believe it.

Id. We observe that more than one witness testified at Henderson's revocation hearing, including Erika, Kiara, and Officer Bailey. Moreover, Henderson fails to show that the testimony of Erika or Kiara was inherently contradictory. To the extent the testimony of Erika or Kiara conflicted with the testimony of Henderson or Henderson argues that their testimony was less believable, we note that this is an issue of witness credibility. The function of weighing witness credibility lies with the trier of fact, not this court. Whited v. State, 645 N.E.2d 1138, 1141 (Ind. Ct. App. 1995). We cannot reweigh the evidence and judge the credibility of the witnesses. See Cox, 706 N.E.2d at 551. Further, we cannot say that the testimony of Erika and Kiara regarding Henderson's actions, including the testimony that he struck Erika on her mouth causing her teeth to be loosened and her mouth to bleed, was so inherently improbable that no reasonable person could believe it. Henderson does not show how the testimony against him was somehow internally inconsistent and has not shown the testimony of Erika or Kiara to be incredibly dubious.

Further, to the extent Henderson asserted at the revocation hearing that he acted in self-defense, the testimony of Erika and Kiara indicate that Henderson was the initial and only aggressor, and we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have found that Henderson did not validly act in self-defense.

Based upon the record, we conclude that the evidence presented during the probation revocation hearing was sufficient to prove by a preponderance of the evidence that Henderson violated his probation by committing an unrelated criminal offense. See Dokes v. State, 971 N.E.2d 178, 180 (Ind. Ct. App. 2012) (considering Dokes's argument that the testimony that he violated the terms of his probation in committing a new criminal offense by possessing a firearm was incredibly dubious, concluding that the incredible dubiosity rule did not apply and that, while only one witness testified that Dokes possessed the gun, there was nothing inherently improbable in that testimony, and affirming the revocation of Dokes's probation).

II.

The next issue is whether the court abused its discretion in ordering that Henderson serve the entirety of his previously suspended sentence of one year in the Madison County Jail. Henderson argues that he has been caring for his children, that this incident was the first violation since his probation began nearly two years earlier, that he had paid all of his fees and costs, and that there was no claim that he violated the conditions to abstain from alcohol and illicit drugs. Henderson also argues that he testified that he had certain medical conditions, namely asthma, sleep apnea, anemia, obesity, fractures going down his spine, and a slipped disk, that the court did not mention his health problems in imposing a sanction of full revocation, and that it was unreasonable for the court to revoke his probation in light of his health needs and the inability of the local jail to meet those needs. The State argues that the court properly sanctioned Henderson, that the facts demonstrate that Henderson had the ability to lift a

8

television and that he twice used his size to pin his wife so that he could choke and punch her in the mouth, and that Henderson's health conditions did not prevent him from striking his wife.

At the time of Henderson's violations and the probation revocation hearing, Ind. Code § 35-38-2-3(g) set forth a trial court's sentencing options if the trial court finds a probation violation and provided:

> If the court finds that the person has violated a condition at any time before termination of the period, the court may impose one (1) or more of the following sanctions:
>
>> (1) Continue the person on probation, with or without modifying or enlarging the conditions.
>>
>> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
>>
>> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

Ind. Code § 35-38-2-3(g) (subsequently amended by Pub. L. No. 147-2012 (eff. Jul. 1, 2012) (amending Ind. Code § 35-38-2-3 and setting forth the contents of subsection (g) under subsection (h))). This provision permits judges to sentence offenders using any one or any combination of the enumerated options. Prewitt v. State, 878 N.E.2d 184, 187 (Ind. 2007).

The Indiana Supreme Court has held that a trial court's sentencing decisions for probation violations are reviewable for abuse of discretion. Id. at 188. The Court explained that "[o]nce a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to

9

proceed" and that "[i]f this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants." Id. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. Id. (citation omitted). As long as the proper procedures have been followed in conducting a probation revocation hearing, "the trial court may order execution of a suspended sentence upon a finding of a violation by a preponderance of the evidence." Goonen v. State, 705 N.E.2d 209, 212 (Ind. Ct. App. 1999).

The record reveals that Henderson, by a preponderance of the evidence and for the purposes of revocation, committed new offenses related to his assault of Erika causing her lower teeth to loosen and her mouth to bleed. Erika testified that Henderson struck her multiple times, first in her daughter's bedroom and later in her bedroom. Officer Bailey testified that he observed that Erika had blood on her teeth and a cut to her mouth, that she was upset, and that Henderson's demeanor "was up and down" and that "[h]e would calm down for a short period of time and then get angry and then calm and get angry and back and forth." Transcript at 29. Henderson testified that he had asthma, sleep apnea, anemia, obesity, fractures going down his spine, and a slipped disk. In closing, the prosecutor argued that the State "believe[s] there is more than sufficient means for [Henderson] to be treated for all of his ailments as he's testified to today," that it "has great concerns for the safety of [Erika], her sister and the children," and that it did not feel that Henderson would leave Erika alone. Id. at 57. The court heard testimony from Erika and Henderson and was able to determine the credibility of the testimony.

10

Henderson did not present evidence establishing that his health issues should be a factor in determining an appropriate period of incarceration or that any of his specific conditions would require treatment which would be unavailable while incarcerated at the Madison County Jail.  See Henderson v. State, 848 N.E.2d 341, 344-345 (Ind. Ct. App. 2006) (noting, where the appellant argued that the trial court erred in failing to consider her poor health to be a mitigating circumstance at sentencing, that there was no evidence in the record establishing that the appellant's multiple health problems should be a factor in determining an appropriate period of incarceration or demonstrating that her medical conditions would be untreatable during incarceration or would render incarceration a hardship).

Given the circumstances as set forth above and in the record, we cannot say that the court abused its discretion in ordering Henderson to serve his previously suspended sentence of one year.  See Milliner v. State, 890 N.E.2d 789, 793 (Ind. Ct. App. 2008) (holding that the trial court did not abuse its discretion in reinstating the probationer's entire previously suspended sentence of one year), trans. denied.

For the foregoing reasons, we affirm the trial court's revocation of Henderson's probation and order that Henderson serve his previously suspended sentence.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.