Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2013, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOEY SAYLOR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 58A01-1206-CR-269 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE OHIO CIRCUIT COURT
The Honorable James D. Humphrey, Judge
The Honorable Kimberly A. Schmaltz, Magistrate
Cause No. 58D01-0701-FC-1

**January 31, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Joey Saylor ("Saylor") appeals the trial court's order revoking his probation and ordering him to serve the remaining two years of his previously-suspended sentence. He raises the following restated issue for our review: whether the trial court abused its discretion when it revoked his probation because the State failed to present sufficient evidence to support the finding that he violated his probation.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On January 11, 2007, the State charged Saylor with Class D felony theft, Class D felony check fraud, and Class C felony forgery. On July 30, 2007, Saylor pleaded guilty to Class C felony forgery, in addition to Class D felony residential entry and Class A misdemeanor resisting arrest from a separate cause number. He was sentenced to eight years with five years suspended to probation. Saylor was released from incarceration on October 8, 2009, and on January 22, 2010, the State filed a notice of probation violation against him. On June 14, 2010, Saylor entered into a joint motion of a conditional negotiated admission with the State, in which he admitted to violating his probation, and three years of his previously-suspended sentence was ordered to be served.

On March 23, 2012, the State filed a second notice of probation violation against Saylor, this time alleging that, on or about March 9, 2012, Saylor tested positive for synthetic cannabinoids. At the time that Saylor began probation, he agreed to the following provision as a condition of his probation: "You shall not use alcohol and you shall not use drugs (controlled substances) unless prescribed by a physician . . . ." *Appellant's App.* at 20. The State specifically alleged that Saylor tested positive for

2

synthetic cannabinoids because his urine screen indicated the presence of "JWH-018 and/or JWH-073 and/or AM-2201 and JWH-250 metabolites." *State's Ex*. 1. According to the certified lab report, Saylor tested positive for JWH-018 and/or JWH-073 metabolites, indicating ingestion of at least one of the following compounds: JWH-018, JWH-073, and/or AM-2201. *Id*. The report also indicated that Saylor tested positive for JWH-250 metabolites. *Id*. "Initially, JWH-018 and JWH-073 were the two most common synthetic cannabinoid chemicals found in a variety of herbal smoking blends." *Def.'s Ex*. B. These herbal smoking blends are known as "fake weed" or "synthetic marijuana." *Id*. Other chemicals including JWH-250 and AM-2201 have become present in newer synthetic cannabinoid products. *Id*.

On May 25, 2012, a fact-finding hearing was held on the State's notice of probation violation. The trial court found that Saylor violated his probation and made the following statement:

> [T]he Court does find by a preponderance of evidence that . . . Saylor, the defendant, did test positive for synthetic cannabinoids, which included the chemical compounds JWH-018 and/or JWH-073. Even if the defendant's argument stands regarding those items and their relationship to AM-2201, independently standing alone is a positive test for JWH-250, which I believe –yes – is included in the definition of synthetic cannabinoids . . . under Indiana Code [section] 35-41-1-26.3; that this is a violation of his probation which required that the probationer not use drugs or controlled substances unless prescribed by a physician, permit any type of test or sample to be taken for the purpose of discovering drug use.

*Tr*. at 59-60. Saylor now appeals.

**DISCUSSION AND DECISION**

"Probation is a matter of grace and a conditional liberty which is a favor, not a right." *Ripps v. State*, 968 N.E.2d 323, 326 (Ind. Ct. App. 2012). The trial court determines the conditions of probation and may revoke probation if those conditions are violated. *Id.* The decision to revoke probation is within the sound discretion of the trial court, and its decision is reviewed on appeal for abuse of that discretion. *Cooper v. State,* 917 N.E.2d 667, 671 (Ind. 2009). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court. *Ripps*, 968 N.E.2d at 326 (citing *Prewitt v. State,* 878 N.E.2d 184, 188 (Ind. 2007)). When reviewing the sufficiency of the evidence to support a probation revocation, we consider only the evidence most favorable to the judgment without reweighing the evidence or judging witnesses' credibility. *Figures v. State*, 920 N.E.2d 267, 272 (Ind. Ct. App. 2010) (citing *Woods v. State,* 892 N.E.2d 637, 639 (Ind. 2008)). A probation revocation hearing is civil in nature, and the State's burden is to prove the alleged violations by a preponderance of the evidence. *Id.* (citing *Cox v. State,* 706 N.E.2d 547, 551 (Ind. 1999)). "'If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation.'" *Id.*

Saylor argues that the trial court abused its discretion when it revoked his probation because he contends that the State failed to present sufficient evidence to prove that he violated a provision of his probation. He specifically contends that the State did not prove by a preponderance of the evidence that he ingested an illegal substance.

4

Saylor asserts that the State failed to present evidence that the presence of the metabolites found in his urine screen came from the ingestion of an illegal compound because some metabolites can be produced from the ingestion of substances that are not illegal.

Saylor agreed to the following provision as a condition of his probation: "You shall not use alcohol and you shall not use drugs (controlled substances) unless prescribed by a physician . . . ." *Appellant's App*. at 20. Indiana Code section 35-48-2-4(d) defines schedule I controlled substances to include "Hallucinogenic substances." A hallucinogenic substance is

> Any material, compound, mixture, or preparation which contains any quantity of the following hallucinogenic, psychedelic, or psychogenic substances, their salts, isomers, and salts of isomers, unless specifically excepted by rule of the board or unless listed in another schedule, whenever the existence of these salts, isomers, and salts of isomers is possible within the specific chemical designation[.]

Ind. Code § 35-48-2-4(d). Included in the definition of hallucinogenic substances, at the time of Saylor's probation violation, were synthetic cannabinoids. Ind. Code § 35-48-2-4(d)(35).[1] A synthetic cannabinoid[2] was defined as "a substance containing one (1) or more" of the chemical compounds listed in the statute. Ind. Code § 35-41-1-26.3(1).[3] Among the compounds listed are JWH-018, JWH-073, and JWH-250, which are the

---

[1] Public Law 78-2012, section 12, effective March 15, 2012, amended Indiana Code section 35-48-2-4(d)(35) by changing "synthetic cannabinoids" to "synthetic drugs."

[2] Public Law 78-2012, section 11, effective March 15, 2012, amended Indiana Code section 35-41-1-26.3 by changing the label of the synthetic substances from "synthetic cannabinoids" to "synthetic drugs."

[3] This was the version of the statute in effect at the time of Saylor's probation violation. It was repealed by Public Law 114-2012, section 67, effective July 1, 2012, and recodified at Indiana Code section 35-31.5-2-321.

compounds for which Saylor tested positive. I.C. § 35-41-1-26.3(1)(B), (D), (H).[4]

Therefore, any substance containing either one or all of the substances JWH-018, JWH-073, or JWH-250 is considered a synthetic cannabinoid and a scheduled I controlled substance.

The State presented evidence that Saylor tested positive for JWH-018 and JWH-073 metabolites. From this evidence, the trial court could have reasonably inferred that Saylor either used AM-2201, which contained JWH-018 and JWH-073 or used some other substance that contained JWH-018 and JWH-073. The certified lab report indicated the presence of JWH-018 and JWH-073 metabolites from Saylor's ingestion of AM-2201 or JWH-018 or JWH-073 or all three. Additionally, Saylor also tested positive for JWH-250 metabolite. Although Saylor finds fault with the lack of identification of an illegal "parent compound," *Appellant's Br*. at 8, 9, the "[p]arent drug is usually not found in urine at detectable concentrations." *Def.'s Ex*. B. The urine test utilized by the State relied on monitoring "multiple hydroxylated and carboxylated metabolites." *Id*. Therefore, the test confirms the existence of the illegal compounds by identifying their metabolites in the urine.

Saylor also contends that AM-2201[5] was a legal substance at the time of his urine test and that he could have ingested it, which could have metabolized into JWH-018 and/or JWH-073. Saylor supplies no authority to support this assertion and there was no

---

[4] Now Ind. Code § 35-31.5-2-321(1)(B),(D),(H).

[5] Public Law 78-2012, section 11, amended Indiana Code 35-41-1-26.3 (now Indiana Code section 35-31.5-2-321) by specifically adding AM-2201 as a synthetic drug. Public Law 78-2012 became effective on March 15, 2012. Saylor's drug test was administered on March 9, 2012.

evidence presented to support that this is what occurred. At the time of Saylor's drug test, in order to be considered a controlled substance, a synthetic cannabinoid must only contain those substances, compounds, or isomers listed in the statute. Although AM-2201 was not specifically listed in the statute, it was an illegal substance because it contained JWH-018 and/or JWH-073 in its composition.

In a probation revocation proceeding, the State must only prove by a preponderance of the evidence that a defendant violated a provision of his probation. *Figures*, 920 N.E.2d at 272. Here, the State presented evidence that Saylor had a positive drug test for metabolites of three illegal synthetic cannabinoids. We conclude that this was sufficient evidence to show, by a preponderance of the evidence, that Saylor used a controlled substance while on probation.

Affirmed.

MATHIAS, J., and CRONE, J., concur.