## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 29 2018, 10:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Markquan Lee, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | May 29, 2018 <br><br> Court of Appeals Case No. <br> 48A02-1712-CR-2988 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Mark Dudley, Jr., Judge <br><br> Trial Court Cause No. <br> 48C06-1702-F5-445 |

**Vaidik, Chief Judge.**

# Case Summary

[1] The trial court revoked Markquan Lee's community-corrections placement for committing a new crime about one month after his placement and ordered him to serve the remainder of his executed sentence in the Department of Correction. Lee argues that the court erred in finding that he violated a condition of his community-corrections placement and in ordering him to serve the remainder of his executed sentence in the DOC. Finding no error in either respect, we affirm.

# Facts and Procedural History

[2] In July 2017, nineteen-year-old Lee pled guilty to Level 5 felony assisting a criminal. Appellant's App. Vol. II p. 65.[1] On August 28, 2017, the trial court sentenced him to five years, with three years executed and two years suspended to probation. According to the trial court's sentencing order, Lee was "given the privilege of serving his executed time on Continuum of Sanctions program," which is a community-corrections program administered by the Madison County Community Justice Center. *Id.* at 68. Lee's probation conditions included not violating any laws and successfully completing Continuum of Sanctions. *Id.* at 69, 70.

---

[1] The guilty plea covered offenses in two other cause numbers as well, but those cause numbers are not part of this appeal.

[3]     On September 28, one month after Lee was sentenced, an Anderson police officer took a report from a man who said that his scooter was taken by three black males at Rick's Food Mart at 22nd Street and Martin Luther King Jr. Boulevard. The victim described the males as being in their late teens to early twenties and approximately 5'8" to 5'10" with thin builds. According to the victim, when he exited the gas station and confronted the male who was sitting on his scooter (the victim described this particular male as having an "afro," Tr. Vol. II p. 8), all three males pulled knives on him and told him that it was "the west side" and they would "fu** him up." *Id.* According to the victim, he then "backed off," put his hands up, and retreated into the gas station. *Id.* The victim gave the officer the vehicle identification number (VIN) for his scooter, and the officer entered the scooter's VIN as "stolen" into IDACS, a law-enforcement database.

[4]     About a week later, on October 6, Officer Brian Gehrke stopped Lee on a scooter at the same Rick's Food Mart. The scooter, which is required to have a license plate, did not have a license plate, and the red taillight cover was missing. Officer Gehrke asked Lee if he had any paperwork for the scooter, and Lee responded that he had "just bought it" from a white male for $100; however, Lee couldn't provide the seller's name or address. *Id.* at 14. Lee also couldn't provide a bill of sale or title for the scooter. Officer Gehrke ran the scooter's VIN through IDACS, and it came back as stolen. Officer Gehrke asked Lee what he was doing at Rick's Food Mart, and Lee said he was on work release and "heading to work at HDP," which is on the south side of

Anderson. *Id.* at 16. Officer Gehrke didn't think this story made sense, because Rick's Food Mart was not on the way from the work-release center to HDP.

[5] On October 11, the Continuum of Sanctions program coordinator filed a petition alleging that Lee violated the program's rules as follows: (1) he committed the new criminal offense of Level 6 felony auto theft and (2) he had a fee arrearage of $542.94. Appellant's App. Vol. II p. 72. Two days later, the probation department filed a notice alleging that Lee violated his probation as follows: (1) he committed the new criminal offense of Level 6 felony auto theft and (2) he failed to successfully complete Continuum of Sanctions. An initial hearing was held on both petitions.[2]

[6] Following an evidentiary hearing on both petitions, *see id.* at 11 (CCS entry), the trial court found that the State proved by a preponderance of the evidence that Lee had committed a new criminal offense:

> I have to look at all the evidence as a whole, it's a lower standard of proof. I get to draw reasonable inferences from the evidence as presented and as a whole I have weak identification of you by the victim. Granted, that's weak. What I have in conjunction with that though is that you . . . possess[ed] the actual moped that the victim owned and gave the VIN number to the first officer that testified. Your explanation for it to be blunt doesn't hold water. If you say you bought it from somebody you certainly identify who that was. If you're unable to identify who that was you can identify where it was. And additionally you

---

[2] The State also charged Lee with Level 6 felony auto theft and Class A misdemeanor theft under Cause No. 48C06-1710-F6-2535, but these charges are still pending.

could have paperwork that would establish that you actually bought it from someone else. You had none of that, no paperwork, no title, no description, no address, no name. [A]nd so I get to draw reasonable inferences from the whole set of facts and the reasonable inference that I am allowed to draw and I am drawing on a preponderance of the evidence standard is that you were one of the three (3), that you took the moped of the victim and you possessed it on October 6th, 2017 when Officer Gehrke approached you and you knew at that point it was stolen, by you. So I'm not asking you to agree with it but I have to give in the record my rationale for finding why the State met its burden of proof.

Tr. Vol. II pp. 25-26. As for Lee's sentence, the court noted that Lee committed auto theft shortly after being sentenced and that this was the fourth crime he had committed "all within a calendar year." *Id.* at 34. The court found that this "doesn't warrant just moving you up . . . a notch on any Continuum of Sanctions list, it warrants . . . revocation to the [DOC]." *Id.* Accordingly, the court terminated Lee's participation in Continuum of Sanctions and ordered him to serve the remainder of his three-year executed sentence in the DOC. Appellant's App. Vol. II pp. 13, 94. The court also ordered that Lee "shall return to Probation, with all original terms to remain in full force and effect." *Id.* at 13.

[7] Lee now appeals.

# Discussion and Decision

[8] Lee contends that the trial court erred in finding that he violated a condition of his community-corrections placement and in ordering him to serve the remainder of the three-year executed portion of his sentence in the DOC.[3] Both community-corrections programs and probation serve as alternatives to commitment to the DOC and are made at the sole discretion of the trial court. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999), *reh'g denied*. Placement in either is a matter of grace and a conditional liberty that is a favor, not a right. *Id*. After a hearing and upon finding that a violation occurred, the trial court may revoke the defendant's placement in community corrections and commit the person to the DOC for the remainder of his sentence. *Christie v. State*, 939 N.E.2d 691, 694 (Ind. Ct. App. 2011) (citing Ind. Code § 35-38-2.6-5).

[9] Our standard of review of an appeal from the revocation of a community-corrections placement mirrors that for revocation of probation. *Cox*, 706 N.E.2d at 551. A revocation hearing is civil in nature, and the State need only prove an alleged violation by a preponderance of the evidence. *Id*. We will

---

[3] The parties frame the issue in terms of the trial court's revocation of Lee's probation. However, it appears that the trial court did not revoke Lee's probation but rather revoked his direct community-corrections placement. The trial court ordered that Lee "shall return to Probation, with all original terms to remain in full force and effect" and did not order him to serve any of the two years that it originally suspended to probation. Appellant's App. Vol. II p. 13. Rather, the court ordered Lee to serve the remainder of the three-year executed portion of his sentence in the DOC. *See id.* ("[T]he following sanction is imposed: 1) Three (3) years is now ordered executed at the Indiana Department of Correction. Credit time (plus good time) of . . . .").

In any event, the commission of a new offense constituted a violation of both community corrections and probation, and our standard of review is the same for both revocations.

consider all the evidence supporting the judgment of the trial court without reweighing that evidence or judging the credibility of the witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of his community-corrections placement, we will affirm the court's decision to revoke. *Id.*

[10] Lee first argues that the trial court erred in finding that he violated the Continuum of Sanctions program's rules by committing auto theft because "[t]here was no evidence beyond the [scooter] itself linking it to the defendant." Appellant's Br. p. 9. To the contrary, the trial court carefully delineated the evidence that it found showed that Lee was one of the three males who took the victim's scooter on September 28 and was not merely in possession of it on October 6. That is, the court highlighted that Lee matched the victim's description, even though it wasn't a great match; Lee was in possession of the stolen scooter one week later; and Lee's explanation for possessing the stolen scooter "[didn't] hold water" as Lee couldn't provide any details of his alleged purchase of the scooter—"no paperwork, no title, no description, no address, no name."[4] This evidence readily supports the court's conclusion that Lee violated the program's rules by committing auto theft. As for Lee's other

---

[4] The trial court specifically found that Lee was one of the three males who took the scooter from the victim. *See* Tr. Vol. II pp. 25-26 ("[A]nd so I get to draw reasonable inferences from the whole set of facts and the reasonable inference that I am allowed to draw and I am drawing on a preponderance of the evidence standard is that you were one of the three (3), that you took the moped of the victim . . . ."). This fact alone distinguishes this case from *Shelby v. State*, 875 N.E.2d 381 (Ind. Ct. App. 2007), *trans. denied*, upon which Lee relies on appeal.

arguments, such as that "paperwork for the purchase" of a scooter is "likely alien to members of the lower strata of society," Appellant's Br. p. 9, they are merely an invitation for us to reweigh the evidence, which we will not do.

[11] Lee next argues that the trial court erred in ordering him to serve the remainder of the three-year executed portion of his sentence in the DOC. He acknowledges that he has an extensive juvenile and adult criminal history. *See* Appellant's App. Vol. II pp. 40-54 (PSI). However, he argues that it is "unrealistic to believe that many defendants with backgrounds like [his] would successfully complete [community service] without any missteps." Appellant's Br. p. 12. Accordingly, Lee argues that the court should have returned him to his placement or ordered home detention. But Lee made this very argument to the court, *see* Tr. Vol. II pp. 27-28, and the court declined either option given how soon Lee violated the terms of his community-corrections placement after he was sentenced and how many convictions he had accumulated that year alone. We find no abuse of the court's discretion in ordering Lee to serve the remainder of the three-year executed portion of his sentence in the DOC.

[12] However, we remand the case to the trial court with instructions to amend the Abstract of Judgment. The Abstract of Judgment specifies that Lee's sentence is three years executed with **no** probation time and that Lee is **not** to be returned to the court for probation after serving the executed portion of his sentence. Appellant's App. Vol. II pp. 94-95. However, the trial court did not order Lee to serve any of the two years that it originally suspended to

probation, and the court's sentencing order states that Lee "shall return to Probation, with all original terms to remain in full force and effect." *Id.* at 13.

[13]    Affirmed and remanded.


Barnes, J., and Pyle, J., concur.