## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 07 2018, 10:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tanner Cripe,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | September 7, 2018<br><br>Court of Appeals Case No.<br>18A-CR-452<br><br>Appeal from the Noble Circuit Court<br><br>The Honorable Michael J. Kramer, Judge<br><br>Trial Court Cause No.<br>57C01-1612-F5-85 |

**Baker, Judge.**

[1] Tanner Cripe appeals his termination from the Noble County Drug Court Program and his sentence for Level 5 Felony Burglary[1] and Level 6 Felony Theft.[2] He argues that the drug court erred by denying him due process during his termination hearing and by not considering certain mitigating factors during sentencing, and that his sentence is inappropriate in light of the nature of the offenses and his character. Finding no error, and that his sentence is not inappropriate, we affirm.

## Facts

[2] On July 16, 2016, a private home security camera recorded Cripe walking from his garage to a neighboring structure in Kendallville owned by Thomas Taner. Cripe entered the structure through an unlocked door and took several items, including a drill, drill bits, flashlight, GPS unit, gloves, and a ratchet set. He then returned to his own garage. The same camera later recorded him leaving his home for work.

[3] Later that day, Kendallville police officers stopped Cripe. They searched his home, finding several items taken from Taner's property. The police also found items that belonged to other people that had been reported stolen in earlier theft cases, including a purse that contained a paycheck payable to Cayla Blackshire and Blackshire's driver's license, and a wallet that contained a driver's license

[1] Ind. Code § 35-43-2-1.

[2] I.C. § 35-43-4-2(a)(1).

belonging to Brent Wagner. Both Blackshire and Wagner had reported these items stolen from their vehicles earlier in the day.

[4] On July 18, 2016, the State charged Cripe with Level 6 felony theft for stealing Blackshire's and Wagner's property. On July 21, 2016, the State charged Cripe under a separate cause number with Level 5 felony burglary for entering Taner's property and stealing tools. The causes were consolidated on September 22, 2016.

[5] On November 2, 2016, Cripe was referred to the Noble County problem solving court, and on November 30, 2016, he was accepted into the program. On December 7, 2016, Cripe entered into a Problem Solving Court Participation Agreement with the State. In this agreement, Cripe agreed to participate in the drug court's programs, and in exchange for his successful completion of the programs, the State would dismiss all charges. The agreement required Cripe to attend and successfully complete all assigned education, treatment, intervention, and service programs; to truthfully answer all reasonable questions asked by the problem solving court team members; to not consume any alcohol; and to not be arrested, charged, cited, or convicted of any violation of the law. The agreement's special conditions also required Cripe to complete an intensive outpatient program as directed by the court; to attend four support group meetings per week in the first phase of the program and as directed by the court thereafter; and to reside at a halfway facility until further order of the court.

[6]     Also on December 7, 2016, Cripe pleaded guilty to the charges and entered the problem solving drug court program. Cripe then violated the terms of his participation agreement five times:

- On February 1, 2017, the drug court found that Cripe violated a no contact order. The drug court advised Cripe that violating a no contact order could be a criminal offense that could end his participation in drug court and lead to jail. The trial court ordered Cripe to attend "Courage to Change" classes through probation.
- On March 22, 2017, the drug court found that Cripe again contacted the individual he was not allowed to contact and sentenced him to eight days in jail.
- On May 10, 2017, the drug court found that Cripe tested positive for alcohol. The drug court increased the frequency of Cripe's drug and alcohol screens and ordered him to attend a meeting[3] every day for the next ninety days.
- On June 7, 2017, the drug court found that Cripe missed a meeting. Cripe stated that he missed it because he did not write it down in his book. The drug court increased Cripe's meeting requirement to a meeting every day for 100 days and ordered him to reside at Pilot House, a men's shelter. On June 28, 2017, the drug court learned that Cripe had been dishonest about why he had missed the meeting and sentenced him to fourteen days in jail.
- On September 20, 2017, the drug court found that Cripe again violated his agreement[4] and sentenced him to forty days in jail, followed by six months of home detention.

---

[3] The record does not specify what kind of meeting Cripe was required to attend.

[4] The record does not reveal exactly how Cripe violated his participation agreement. The trial court stated that "you've been sanctioned multiple times for this same thing and you just keep going back to it." Tr. Vol. II p. 152.

On November 21, 2017, the probation department filed a drug court violation report stating that Cripe was going to be evicted from Pilot House that day;[5] the report recommended a hearing to determine whether Cripe had violated the terms of his participation agreement and whether it should be modified or revoked. A hearing took place on November 22, 2017, during which the drug court told Cripe that the drug court team would be meeting to discuss whether he should be terminated from the program. The drug court also told Cripe that someone involved with the program would talk with him about the process. The drug court asked Cripe whether he had any questions, to which Cripe replied, "No sir, thank you." Tr. Vol. II p. 174.

The termination hearing took place on November 29, 2017, during which the following exchange occurred:

> Court: The Drug Court team has decided that you be terminated from Drug Court. Do you want an attorney to represent you?
>
> Cripe: Um, at this point let's just move forward to sentencing it would be wasting the Court's time to ask for an attorney I've already pled guilty in this case.
>
> Court: You just want to represent yourself and admit that you violated.

---

[5] The record does not reveal the reason for Cripe's eviction.

Cripe: Yeah.

*Id.* at 177. The drug court terminated Cripe's participation with the drug court program, ordered a pre-sentence investigation report, scheduled a sentencing hearing, and told Cripe that a probation officer would talk with him about the pre-sentence investigation report. The drug court then asked Cripe whether he had any questions, and Cripe responded, "not at this time." *Id.* at 178.

[9] On December 7, 2017, Cripe requested an attorney, and one was appointed for him. On January 24, 2018, the sentencing hearing took place. During the hearing, the trial court found Cripe's involvement with the drug court program to be a mitigating factor; in its sentencing order, it found potential hardship suffered by Cripe and/or Cripe's dependents by his imprisonment to be another mitigating factor. The trial court found that Cripe's lengthy criminal history, which includes previous convictions for burglary and theft, to be an aggravating factor. The trial court then sentenced Cripe to concurrent terms of six years for burglary and two and one-half years for theft, with two years executed, three years in community corrections, and one year on probation. Cripe now appeals.

## Discussion and Decision

## I. Due Process

[10] Cripe argues that he did not receive minimum due process during the hearing that resulted in the termination of his participation in the drug court program.

Specifically, he claims that he received inadequate notice of the alleged program violation for which he was terminated and was deprived of his right to counsel.

[11] The drug court program is a forensic diversion program akin to community corrections, and we will review the termination of placement in a drug court program as we do a revocation of placement in community corrections. *Withers v. State*, 15 N.E.3d 660, 663 (Ind. Ct. App. 2014). Our Court has stated that:

> For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. The similarities between the two dictate this approach. Both probation and community corrections programs serve as alternatives to commitment to the [Department of Correction] and both are made at the sole discretion of the trial court. A defendant is not entitled to serve a sentence in either probation or a community corrections program. Rather, placement in either is a matter of grace and a conditional liberty that is a favor, not a right.
>
> While a community corrections placement revocation hearing has certain due process requirements, it is not to be equated with an adversarial criminal proceeding. Rather, it is a narrow inquiry, and its procedures are to be more flexible. This is necessary to permit the court to exercise its inherent power to enforce obedience to its lawful orders. . . .

*Id.* at 663-64.

[12] Indiana Code section 33-23-16-14.5 governs the termination of an individual's participation in a problem solving court program. The statute provides:

(c) The problem solving court judge or other hearing officer shall conduct a hearing concerning an alleged violation of a condition of a problem solving court program as follows:

\*\*\*

(3) The individual who is alleged to have committed the violation is entitled to:

(A) receive written notice of the alleged violation;

(B) obtain the disclosure of evidence against the individual;

(C) confront and cross-examine witnesses; and

(D) be represented by counsel.

I.C. § 33-23-16-14.5.

[13] Cripe first contends that he did not receive adequate written notice of the alleged violation that led to the termination of his participation in drug court. The drug court violation report filed by a probation officer stated that:

On November 20, 2017, this Officer was advised that Mr. Cripe is going to be evicted from the Pilot House program on November 21, 2017.

Appellant's App. Vol. II p. 53.

[14]     This notice was sufficient to apprise Cripe of the alleged violation—that he was going to be evicted from the Pilot House. Although Cripe contends that the report does not specify how an eviction could violate the terms of his participation agreement, one of the special conditions of his participation agreement was that he had to reside at a halfway facility until further order of the court; Cripe's pending eviction was in violation of this condition. Cripe does not dispute that he was evicted, nor does he contend that he was evicted for a reason that should not have resulted in the drug court finding a violation of his participation agreement. Rather, he simply speculates that he could have been evicted for a reason that would not have resulted in a violation.

[15]     Moreover, at both the November 22 and 29 hearings, Cripe was given opportunities to ask questions; he did not ask any at either hearing. Cripe had appeared before the drug court multiple times during his time with the program and had asked questions during at least one previous hearing. Then, at the November 29 hearing, Cripe admitted to the violation. It is reasonable to infer that because Cripe asked no questions and admitted to the violation that he knew and understood his violation. We find, therefore, that Cripe did not receive inadequate notice of his alleged violation.

[16]     Cripe also contends that he was deprived of his right to counsel. At the November 22, 2017, hearing, the following exchange took place:

> Court: The Drug Court team has decided that you be terminated from Drug Court. Do you want an attorney to represent you?

> Cripe: Um, at this point let's just move forward to sentencing it would be wasting the Court's time to ask for an attorney I've already pled guilty in this case.
>
> Court: You just want to represent yourself and admit that you violated.
>
> Cripe: Yeah.

Tr. Vol. II p. 177.

[17] Cripe argues that this exchange does not show that his waiver of his right to counsel was knowing, voluntary, and intelligent. To support his assertion, he analyzes the *Poynter* factors that this Court considers when determining whether a waiver of counsel is knowing, voluntary, and intelligent. *See Poynter v. State*, 749 N.E.2d 1122 (Ind. 2001). But the *Poynter* factors apply to waiver of counsel for a criminal defendant entitled to the Sixth Amendment right to counsel at trial. *See Poynter*, 749 N.E.2d at 1125-28. An individual participating in a problem solving drug court is not entitled to the full array of constitutional rights afforded to defendants at trial, including the Sixth Amendment right to counsel. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999) (discussing due process rights for a hearing on a petition to revoke placement in community corrections). Consequently, Cripe's right to counsel is bestowed by statute rather than by constitution. A waiver of a statutory right requires less inquiry than a waiver of a constitutional right. This is because, for sentencing alternatives such as problem solving drug courts "to be viable options for Indiana judges, judges must have the ability to move with alacrity to protect

public safety when adjudicated offenders violate the conditions of their sentences." *Id.* at 550. In other words, "obstacles to revoking an alternative sentence may diminish the likelihood of [the alternative sentence] being made in the first place." *Id.*

[18] The drug court asked Cripe whether he wanted an attorney; when Cripe declined, the drug court confirmed that Cripe wanted to represent himself. While Cripe takes issue with the court's semantics, the record shows that Cripe invited the court to move forward with his case. Further, Cripe has significant experience with the criminal justice system, including previous participation with another problem solving drug court program from which he was also terminated. In other words, Cripe knew he could have obtained an attorney, and he intentionally decided to forego having one on November 22. That Cripe later wrote to the court to ask for an attorney further shows that Cripe knew that he had a right to an attorney. We find no error with Cripe's waiver of his right to counsel at this hearing.[6]

---

[6] Cripe also contends that his admission to the violation is invalid because he was deprived of his right to counsel. Because we find no error with his waiver of right to counsel, we do not find that his admission was invalid. Cripe then contends that the cumulative effect of the lack of notice and counsel resulted in his being deprived of his required hearing. Based on our conclusions, we find this argument unavailing.

# II. Mitigating Factors

[19]     Cripe also argues that the trial court erred by not considering two mitigating factors: Cripe's guilty plea and the undue hardship Cripe's dependents would suffer upon his imprisonment.

[20]     Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g on other grounds at* 875 N.E.2d 218. A trial court may err in its decision if it is clearly against the logic and effect of the facts and circumstances before the court. *Id.* A trial court may err by finding aggravating or mitigating factors that are not supported by the record, by omitting factors that are clearly supported by the record and advanced for consideration, or by finding factors that are improper as a matter of law. *Id.* at 490-91. "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* at 493.

[21]     Our Supreme Court has held "that a defendant who pleads guilty deserves 'some' mitigating weight be given to the plea in return." *Anglemyer v. State*, 875 N.E.2d 218, 220 (Ind. 2007) (quoting *McElroy v. State*, 865 N.E.2d 584, 591 (Ind. 2007)). A trial court may attribute little weight to a guilty plea when the plea "does not demonstrate the defendant's acceptance of responsibility or when the defendant receives a substantial benefit in return for the plea." *Id.* at 221. A defendant's decision to plead guilty may be merely pragmatic when the

evidence is strong against him and thus, his guilty plea is not a mitigating factor. *Wells v. State*, 836 N.E.2d 475, 479 (Ind. Ct. App. 2005).

[22] Here, Cripe received a substantial benefit in return for his plea because he was able to enroll in the drug court program and receive help and treatment for his problems. Further, Cripe's guilty plea appears to be merely pragmatic because there was already strong evidence against him. A camera recorded Cripe entering and taking several items from his neighbor's property. A search of Cripe's garage revealed the items he took from that property and other items that had been reported stolen in separate theft cases. The trial court did not err by declining to find Cripe's guilty plea to be a mitigating factor.

[23] As for the undue hardship Cripe's dependents may suffer by his imprisonment, the trial court did find that factor to be mitigating. Although the trial court did not mention it during the sentencing hearing, the court included it as a mitigating factor in its written sentencing order. And while the trial court found Cripe's participation in the drug court program to be a mitigating factor during the sentencing hearing, it did not include that in its sentencing order.

[24] This Court is not confined to either the oral sentencing statement or the written sentencing order to determine what the trial court found as mitigating and aggravating factors; instead, we examine both to determine the trial court's conclusions. *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007). Here, because the trial court found one mitigating factor during sentencing that was not included in its sentencing order, and one mitigating factor in its sentencing

order that was not mentioned during the hearing, it is reasonable to conclude that the trial court found both factors to be mitigating. Therefore, the trial court did not err by not finding any undue hardship on Cripe's dependents to be a mitigating factor, because the trial court did, in fact, find it to be a mitigating factor.

# III. Sentence

[25] Cripe next argues that the sentence is inappropriate in light of the nature of the offenses and his character pursuant to Indiana Appellate Rule 7(B). In considering an argument under Rule 7(B), we must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision— since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[26] Cripe was convicted of Level 5 felony burglary, for which he faced a term of one to six years imprisonment, with an advisory term of three years. Ind. Code § 35-50-2-6(b). The trial court imposed a six-year term. Cripe was also convicted of Level 6 felony theft, for which he faced a term of six months and two and one-half years, with an advisory sentence of one year. I.C. § 35-50-2-7(b). The trial court imposed a sentence of two and one-half years. The trial court ordered the sentences to run concurrently with two years executed, three years on community corrections, and one year on probation. Had the trial

court ordered consecutive terms, Cripe would have received a sentence of eight and one-half years.

[27] With respect to the nature of the offenses, Cripe burglarized a neighbor's property and stole several valuable items from that neighbor. Cripe also broke into two vehicles, stealing the wallets of each vehicle's owner.

[28] With respect to Cripe's character, Cripe now has four felony convictions for burglary and four felony convictions for theft. He also has a felony conviction for possession of a controlled substance and misdemeanor convictions for possession of an alcoholic beverage, driving while suspended, and false informing. Cripe has repeatedly failed to take advantage of the leniency in sentencing and the opportunities for rehabilitation that he has received. Most notably, during his previous participation in a drug court program, he violated the terms of his placement at least four times, resulting in him serving two years in the Department of Correction. His violations in the instant case show that he failed to learn from either of his experiences with a drug court program and is unable or unwilling to reform his behavior.

[29] Under these circumstances, we find that the sentence imposed by the trial court is not inappropriate in light of the nature of the offenses and Cripe's character.

[30] The judgment of the trial court is affirmed.

May, J., and Robb, J., concur.