## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 24 2019, 9:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Hanson
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gary L. Taylor,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 24, 2019

Court of Appeals Case No.
18A-CR-599

Appeal from the
Allen Superior Court

The Honorable
Samuel R. Keirns, Magistrate

Trial Court Cause No.
02D06-1708-F5-232

**Kirsch, Judge.**

[1] Gary L. Taylor ("Taylor") appeals the trial court's order revoking his probation and ordering him to serve his six-year sentence in the Indiana Department of Correction ("the DOC").

[2] We affirm.

## Facts and Procedural History

[3] In October 2017, Taylor pleaded guilty to Count I, criminal confinement[1] as a Level 5 felony; Count II, domestic battery with a previous domestic battery conviction[2] as a Level 6 felony; and Count V, resisting law enforcement[3] as a Class A misdemeanor.[4]  Pursuant to his plea agreement, the trial court sentenced Taylor to six years for Count I, three years of which were to be served on home detention with Allen County Community Corrections ("Community Corrections") and three years suspended to probation.  The trial court also sentenced Taylor to two years for Count II and one year for Count V and ordered the sentences for all three convictions to be served concurrently.

[4] Community Corrections approved Taylor's participation in the home detention program on October 30, 2017, only after Taylor's friend Maria agreed that he

---

[1] *See* Ind. Code § 35-42-3-3(b)(1)(C).

[2] *See* Ind. Code § 35-42-2-1.3(b)(1)(A).

[3] *See* Ind. Code § 35-44.1-3-1(a)(3).

[4] While the State reports that Taylor also pleaded guilty to Count III, a second count of Level 6 felony domestic battery, and Count IV, Level 6 felony strangulation, *Appellee's Br.* at 5, we note that the trial court dismissed those counts as part of the plea agreement.  *Appellant's App. Vol. 2* at 36, 44.

could serve the first two weeks of detention in her home. However, friction between Maria and Taylor arose when Taylor overstayed his welcome, leaving Maria to pay for his food, housing, and other living expenses. On November 26, 2017, Maria told Taylor he could no longer stay in her home. The two fought, and county police officers were called about the domestic disturbance. Before leaving Maria's home that night, Taylor called Community Corrections to alert them about the change in his housing situation, and a representative from Community Corrections ordered Taylor to report directly to the Community Corrections facility "to resolve this residential issue." *Tr. Vol. 1* at 10.

[5] As part of home detention, Taylor was required to wear an electronic GPS monitoring device ("ankle monitor"). Testimony at the revocation hearing revealed that Taylor did not, as ordered, go directly to Community Corrections. Community Corrections Officer Kevin McIntosh ("Officer McIntosh") testified that his unit had tracked Taylor, via his ankle monitor, travelling from Maria's home to a nearby housing addition where he "milled around" for some time. *Id*. at 9.

> [Taylor] then went to a gas station and walked across a large field and milled around there for a few minutes. Then he crossed over, I believe it was Maplecrest, over to the rear of a cemetery and was walking behind the cemetery. He then went to a church across the road and milled around the church, hid behind a dumpster it appeared for a few minutes, and then continued on across the road behind Galbraith's Landscaping, along the creek, several hundred yards, I believe, off the road.

*Id*. at 9-10.

[6] County police officers responded to the report of a domestic disturbance and, after finding Taylor by the creek, detained him. Officer McIntosh joined the county officers, and when he got about twenty feet away from Taylor, he could hear the beeping of Taylor's ankle monitor. Officer McIntosh explained that the ankle monitor makes a beeping noise "whenever a message has been sent to it." *Id*. at 10. A printout revealed that Community Corrections personnel had sent three messages to Taylor's ankle monitor and had also tried to call him three times. Taylor explained that he did not answer the calls because he was on the phone with someone else at the time. *Id*. at 11-12. Before Taylor was taken into custody, police confiscated a black backpack and a small paring knife, which the police considered to be "a weapon"; Taylor had taken both items from Maria's home without her permission. *Id*. at 12-13.

[7] On November 27, 2017, the State charged Taylor with Class A misdemeanor unauthorized absence from home detention, a charge to which Taylor later pleaded guilty.[5] *Appellant's Br.* at 15. Over the following week, the State filed a petition to *revoke* Taylor's *placement* in home detention, and the Allen County Probation Department filed a petition to *revoke probation*. The latter petition alleged that Taylor: (1) failed to maintain good behavior when he committed the new crime of unauthorized absence from home detention; and (2) failed to

---

[5] Discussing this charge in his brief, Taylor initially stated, "As of the date of the contested hearing, [Taylor] had maintained his innocence and was preparing for a jury trial in that matter." *Appellant's Br.* at 12.

maintain good behavior when he did not successfully complete home detention. *Appellant's App. Vol. II* at 50.

[8]   During a February 2018 hearing on the petition to revoke his probation, Taylor argued that he had left his authorized residence, Maria's home, only after Community Corrections ordered him to "walk down" to their offices. *Tr. Vol. 1* at 40-41. The evidence revealed that Taylor "milled around" a nearby housing addition, went to a gas station, walked around the back of a cemetery, wandered around a church, hid behind a dumpster for a few minutes, and then wandered along a creek. *Id*. at 9-10. Taylor admitted that he took a circuitous route to Community Corrections but testified that it was not his "intention to evade law enforcement." *Id*. at 40. He claimed that he took that route because Maria had threatened him with a knife, and he was afraid she might continue to follow him. *Id*. at 38, 39.

[9]   The trial court found that, while Taylor was authorized to leave Maria's home, he was not authorized to travel to the gas station or the church, nor was he authorized to stop behind the dumpster. *Id*. at 61-62. Furthermore, Taylor did not respond to the clear beeping of his monitor—notification that Community Corrections had sent messages to his monitor. *Id*. at 62. The trial court found that Taylor had violated the terms of both his Community Corrections and his probation, revoked Taylor's participation in those two programs, and ordered

him to serve his six-year sentence in the DOC. Taylor appeals only the revocation of his probation and his six-year executed sentence in the DOC.[6]

## Discussion and Decision

[10]   Citing to Indiana Appellate Rule 7(B), Taylor characterizes his issues as whether the revocation of his probation and the imposition of his six-year sentence were inappropriate in light of the nature of the offenses and the character of the offender. *Appellant's Br.* at 4. We remind Taylor's counsel that a trial court's action in a post-sentence probation violation proceeding is not a criminal sentence as contemplated by Appellate Rule 7(B). *Wooten v. State*, 946 N.E.2d 616, 622 (Ind. Ct. App. 2011) (citing *Jones v. State*, 885 N.E.2d 1286, 1290 (Ind. 2008) ("A trial court's action in a post-sentence probation violation proceeding is not a criminal sentence as contemplated by the rule. The review and revise remedy of App. R. 7(B) is not available.")), *trans. denied*. Rather than the independent review afforded sentences under Appellate Rule 7(B), a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. *Id.* Thus, to challenge the trial court's decision to revoke Taylor's probation and to impose his suspended sentence, defense counsel needed to allege that the trial court abused its discretion. Counsel has

---

[6] Taylor contends that his appeal "focuses entirely on what constitutes an *appropriate sanction* for [his] admitted violation." *Appellant's Br.* at 15 (emphasis added). Yet, one paragraph later, he contends that the revocation of his probation was inappropriate. *Id.* We address both claims.

failed to do so. Moreover, even if counsel had raised such a valid claim, his arguments would not establish that the trial court abused its discretion.

[11] "'Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled.'" *Cain v. State*, 30 N.E.3d 728, 731 (Ind. Ct. App. 2015) (quoting *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007)), *trans. denied*. "Courts in probation revocation hearings 'may consider any relevant evidence bearing some substantial indicia of reliability.'" *Id*. (quoting *Cox v. State*, 706 N.E.2d 547, 551 (Ind. 1999)). "It is within the discretion of the trial court to determine the conditions of a defendant's probation and to revoke probation if the conditions are violated." *Id*. Our court has said that "all probation requires 'strict compliance'" because once the trial court extends this grace and sets its terms and conditions, the probationer is expected to comply with them strictly." *Id*. at 731-32 (quoting *Woods v. State*, 892 N.E.2d 637, 641 (Ind. 2008)). "If the probationer fails to do so, then a violation has occurred." *Id*.

[12] Taylor first argues that, regardless of whether he violated a term of his probation, the "pre-emptive revocation of his probation before he was even placed on probation is inappropriate under these circumstances." *Appellant's Br*. at 18. We disagree. Our court has held that "a defendant's probationary period begins from the date of his sentencing and a violation of the terms of his probation may occur even though he has not yet begun serving his sentence, let alone his probation." *Baldi v. State*, 908 N.E.2d 639, 642 (Ind. Ct. App. 2009) (citing *Baker v. State*, 894 N.E.2d 594, 598 (Ind. Ct. App. 2008)); *see also Waters*

*v. State*, 65 N.E.3d 613, 617 (Ind. Ct. App. 2016) ("[A] defendant can have his probation revoked prospectively and his suspended time imposed even before he begins the probation phase of his sentence.") Accordingly, Taylor's probation was subject to revocation regardless of whether he had begun to serve the probationary phase of his sentence.

[13] Taylor's probation required that he maintain "good behavior."[7] *Appellant's App. Vol. 2* at 50. Taylor's admission that he pleaded guilty to Class A misdemeanor unauthorized absence from home detention constituted an admission that he was not maintaining good behavior. This factor alone provided proof by a preponderance of the evidence that Taylor had violated a condition of his probation.[8] *See Pierce v. State*, 44 N.E.3d 752, 755 (Ind. Ct. App. 2015) ("One violation of a condition of probation is enough to support a probation revocation.").

[14] Where, like here, the trial court finds that a defendant has violated a condition of his probation, it may (1) continue the probation with or without modifying

---

[7] While the terms of Taylor's probation are not in the record before us, we believe that good behavior was a term of Taylor's probation. The State alleged in its petition for probation revocation that Taylor violated the conditions of his probation when he "[d]id not maintain good behavior," *Appellant's App. Vol. 2* at 50; Taylor did not dispute that maintaining good behavior was a condition of his probation.

[8] Taylor argues that it was improper for the trial court to revoke his probation because: (1) his act of leaving the home was not "precipitated" by his behavior; (2) he was faced with the challenge of walking eight miles to the Community Corrections office, which was a long and complicated route; and (3) his explanation for his odd course of travel was consistent with his testimony that he feared Maria might try to follow him. *Appellant's Br.* at 16-17. These arguments are a request that this court reweigh the evidence, which we cannot do. *See Mogg v. State*, 918 N.E.2d 750, 755 (Ind. Ct. App. 2009) (in determining whether trial court abused its discretion, we do not reweigh evidence).

the probation conditions; (2) extend the probationary period for up to one year; or (3) revoke the probation and order the execution of all or part of the sentence suspended at the initial hearing. Ind. Code § 35-38-2-3(h). Here, the question is whether the trial court abused its discretion when it ordered Taylor to serve his entire six-year sentence. We find no abuse of discretion.

[15] Taylor was allowed to participate in home detention only because his friend Maria had agreed that he could stay with her for the first two weeks of his home detention. Almost four weeks later, Taylor was not "apparently working," was still living with Maria, and was contributing little toward the household payments.[9] *Tr. Vol. 1* at 62. Maria asked Taylor to leave, and he did so. It is true that Taylor took the effort to call Community Corrections. Nevertheless, he made the mistake of not going directly to their office. Furthermore, Taylor did not respond to either the beeping of his monitor or the telephone calls from Community Corrections personnel. The trial court noted that Taylor "did not respond to [Community Corrections'] attempts to communicate and verify the reasoning for [his] deviation in [his] route of travel to the point that [Community Corrections] had to dispatch officers in an attempt to locate [him] because [he was] not where [he was] supposed to be or doing what [he was] supposed to be doing." *Tr. Vol. 2* at 63-64.

---

[9] The trial court heard testimony that Taylor was to start a new job two days after he was detained. However, speaking with Taylor, the trial court said, "[Y]ou weren't apparently working and you weren't apparently paying much and you weren't apparently doing a whole lot." *Tr. Vol. 1* at 62.

[16]     The Allen County Probation Office recommended that the trial court revoke Taylor's probation and commit him to the DOC. *Appellant's App. Vol. 2 at 53, 54.* On appeal, Taylor has provided no evidence that the trial court abused its discretion when it ordered him to serve his suspended sentence. While it was within the trial court's discretion to continue Taylor's probation, with or without modifying the probation conditions, or to extend the probationary period for up to one year, we cannot say that the trial court abused its discretion when it ordered Taylor to serve his suspended sentence of six years in the DOC.

[17]     Affirmed.

Riley, J., and Robb, J., concur.