## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 30 2020, 10:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paul J. Podlejski
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Qashaun Thomas, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | January 30, 2020 <br><br> Court of Appeals Case No. 19A-CR-1711 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable David A. Happe, Judge <br><br> Trial Court Cause No. 48C04-1807-F3-1918 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Qashaun Thomas (Thomas), appeals the sanction imposed by the trial court following the revocation of his commitment to work release.

We affirm.

# ISSUE

Thomas presents the court with one issue, which we restate as: Whether the trial court abused its discretion when it ordered Thomas to execute four years of his sentence with the Indiana Department of Correction (DOC) following the revocation of his work release commitment.

# FACTS AND PROCEDURAL HISTORY

On July 26, 2018, and October 30, 2018, the State filed an Information, charging Thomas with Level 3 felony dealing in a narcotic drug (heroin); Level 4 felony unlawful possession of a firearm by a serious violent felon; Level 5 felony possession of a narcotic drug (heroin), and Class A misdemeanor carrying a handgun without a license. On July 26, 2018, the State also filed a notice of its intention to file a habitual offender enhancement against Thomas. On February 12, 2019, Thomas pleaded guilty to the Level 3 felony dealing in a narcotic drug charge. On February 13, 2019, Thomas was allowed to begin work release pending sentencing. The pre-sentence investigation report filed prior to sentencing revealed that on December 8, 2015, Thomas had been sentenced to two years in the Michigan Department of Corrections following

his guilty plea to delivery/manufacture of marijuana and possession of cocaine charges. The pre-sentence investigation also revealed that on May 12, 2016, Thomas had been sentenced to two years in the Michigan Department of Corrections following his guilty plea to a felony firearm charge.

[5] On March 26, 2019, the trial court conducted Thomas' sentencing hearing. The trial court acknowledged Thomas' good conduct since being granted pre-sentencing work release, rejected the State's request for a sentence fully executed with the DOC, and sentenced Thomas to seven years, four of which were to be served on work release, with three years suspended to probation. The trial court advised Thomas that it was putting him on what it called "a short leash," meaning that violation of his work release conditions that would be considered less significant for other offenders would be treated more seriously for him because of his criminal record. (Transcript Vol. II, p. 20). The trial court noted that the State had made compelling arguments against a work release placement but that "sometimes people get chances that they really don't deserve because we want to help them to make some changes in their life." (Tr. Vol. II, p. 21). As part of his work release commitment, Thomas received a copy of, and agreed to abide by, the Madison County work release facility's policies and rules.

[6] On May 7, 2019, Thomas was informed by his employer, Bridges of Hope, that he was being laid off. Thomas did not inform his work release case manager, Rose Horvath (Horvath), that he had been terminated. On May 8, 2019, at 7:44 a.m., Thomas was released for work as usual and did not return to work

release until 9:19 p.m. Although Thomas stopped by Bridges of Hope that day around 8:30 a.m. to return his work shirts and retrieve a document, he was not at Bridges of Hope the remainder of the day. Thomas did not have permission to be anywhere but Bridges of Hope on May 8, 2019.

[7] On May 9, 2019, Thomas turned in his weekly pass showing his schedule and whereabouts. Due to having no confirmation signatures for time spent at Band of Brothers on May 1, 2019, the Anderson Center on May 7, 2019, and his job search time on May 9, 2019, Thomas had eight hours of unaccounted-for time that week. On May 10, 2019, due to Thomas' accumulation of unaccounted-for time, Horvath instructed Thomas that he could attend the one-hour Jump Start program at Man4Man Ministries but that he could not stay at Man4Man afterwards because she wanted him to be at a location where he was required to clock in and out, something that was not consistently available at Man4Man. On May 14, 2019, Thomas was released to attend Jump Start and should have returned to work release by 9:30 a.m., but he did not return until 5:03 p.m. When Horvath discussed with Thomas the fact that he had not followed her order, he acknowledged that he knew that he was not supposed to be away from the facility.

[8] On May 16, 2019, the State filed a petition to terminate Thomas' work release commitment in which it alleged that Thomas had violated the terms of work release on May 8, 2019, by having twelve hours and forty-nine minutes of unaccounted-for time; on May 8, 2019, by committing the new offense of failure to return to lawful detention; on May 9, 2019, for having accumulated

eight hours of unaccounted-for time; on May 14, 2019, by failing to obey a direct order; and by owing $290.44 to work release. On June 25, 2019, the trial court held an evidentiary hearing on the State's petition at which Horvath testified about the allegations and Thomas testified regarding his version of events. The trial court found that the State had proven by a preponderance of the evidence that Thomas had violated the terms of his work release as alleged.

[9] The trial court proceeded to hear argument regarding what sanction to impose following the revocation of Thomas' work release placement. The trial court found that, in spite of his criminal record, Thomas had been given an opportunity to stay in the community through his work release commitment, Thomas had been given specific rules to follow so that all of his time would be accounted for, but that Thomas had not followed those rules. The trial court ordered Thomas to serve the four years with the DOC that had previously been his commitment to work release.

[10] Thomas now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[11] Thomas challenges the sanction imposed by the trial court following the revocation of his placement on work release. As part of its sentencing decision, a trial court may suspend a defendant's sentence and order him to be placed in a community corrections program as an alternative to a commitment to the DOC. Ind. Code § 35-38-2.6-3(a). A defendant is not entitled to serve a

sentence in a community corrections program. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999). Such a placement is a matter of grace on the part of the trial court that is a favor and not a right. *Id.* If a trial court determines that a defendant has violated the terms of his community corrections placement, it may "revoke the placement and commit the person to the . . . [DOC] for the remainder of the person's sentence." *See* I.C. § 35-38-2.6-5(4). We review a trial court's decision on what sanction to impose following revocation for an abuse of discretion. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). An abuse of the trial court's discretion occurs when its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

## II. *Sanction*

[12] Upon revoking Thomas' work release commitment, the trial court ordered Thomas to execute the four years of his sentence that it had previously ordered him to serve on work release. The trial court found that Thomas had been shown leniency at sentencing for the underlying Level 3 felony dealing in a narcotic drug conviction, that he had been given specific rules and regulations to follow by the work release facility, but that he had failed to abide by those rules. Given the seriousness of the underlying conviction, the tremendous opportunity to avoid the DOC that Thomas had been afforded given his previous criminal record, the fact that Thomas had only been on work release for approximately three months before he started violating the terms of his conditional freedom, and the number of violations he incurred, we do not find any abuse of discretion on the part of the trial court in ordering Thomas to

execute his sentence with the DOC. This is particularly true in light of the trial court's advisement at sentencing that Thomas was on a "short leash" and that violations of work release conditions that would have been treated more leniently if incurred by another offender would be treated more seriously for him. (Tr. Vol. II, p. 20).

[13] Thomas argues that the trial court abused its discretion because his violations were in furtherance of the goals of work release because most of his unaccounted-for time was spent attending programs and looking for work. Thomas also argues that this was the first notice of violation filed against him by the State, the violations were merely technical, and that he had otherwise performed well on work release. We do not find these arguments to be persuasive because the whole purpose of work release is to allow offenders to work while being closely monitored in the community. The trial court was under no obligation to credit Thomas' explanations that he was looking for work and attending programs at the times the State alleged he had unaccounted-for time. The fact remains that he did not have the latitude to set his own schedule, no matter what he was doing. Finding no abuse of the trial court's discretion, we affirm its order that Thomas execute four years of his sentence with the DOC. *See Prewitt*, 878 N.E.2d at 188.

## CONCLUSION

[14] Based on the foregoing, we conclude that the trial court did not abuse its discretion when it ordered Thomas to serve four years with the DOC following the revocation of his work release commitment.

[15]     Affirmed.

[16]     Baker, J. and Brown, J. concur